UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

VALERIE FLORES,

               Plaintiff,

v.                                                                  1:25-CV-1838
                                                                       (AMN/ML)
KENNETH LESTER SMITH;
SAMANTHA SUSSEK SMITH;
MELISSA JOHNSON SMITH; and
ANNA VI WELCH,

               Defendants.

_____

APPEARANCES:                                                OF COUNSEL:

Valerie Flores
  Plaintiff, *Pro Se*
Post Office Box 1110 ACP 5749
Albany, New York 12201

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

      Plaintiff Valerie Flores ("Plaintiff") commenced this *pro se* action against Defendants

Kenneth Lester Smith, Samantha Sussek Smith, Melissa Johnson Smith, and Anna Vi Welch

(collectively "Defendants") alleging violations of her rights.  (Dkt. No. 1.)  Plaintiff did not pay

the filing fee and seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 14.)  For the

reasons set forth below, I (1) grant Plaintiff's second amended IFP application, and (2)

recommend that the Complaint be dismissed in its entirety.

## I.    BACKGROUND

Construed as liberally[1] as possible, the Complaint alleges violations of Plaintiff's rights by Defendants.  (*See generally* Dkt. No. 1.)  More specifically, Plaintiff alleges that in 2024, she went to a store in Wisconsin to try and sell "a few boots & a few sweaters."  (Dkt. No. 1 at 4.)  Plaintiff alleges that she "think[s] Melissa Johnson Smith showed up there."  (*Id*.)  Staff of the store told Plaintiff that they were done with her, which Plaintiff perceived as rude.  (*Id*.)  Plaintiff alleges that the store employees attempted to keep two things that belonged to Plaintiff without paying Plaintiff for the items.  (*Id*.)  The Complaint alleges that "[e]ither the worker, the owner, or Melissa Johnson Smith had a light turquoise Prius."  (*Id*.)

Plaintiff appears to allege that in late 2024 and early 2025, (1) in New York she observed a maroon prius multiple times, (2) in Washington, D.C., she observed a light turquoise prius and a maroon prius, and (3) in Maryland she observed a light turquoise prius at a rest stop.  (*Id*.)

The Complaint outlines various occurrences that Plaintiff describes as stalking where she observed a particular car that she *thinks* was driven by one of Defendants or that the driver *resembled* one of Defendants.  (Dkt. No. 1 at 5.)

Plaintiff alleges that she has not talked to "Kenny" in years and Kenny is friends with Defendant Welch or was friends with her on "FB" years ago.[2]  (*Id*.)  Plaintiff alleges that Kenneth told her "years ago that Samantha made fun of him for being friends with" Plaintiff.  (*Id*.)

---

[1]    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]    It is unclear if "Kenny" refers to Defendant Kenneth Lester Smith or another individual.

Based on these factual allegations, Plaintiff appears to allege the following claims: (1) a claim of interstate pursuant to 18 U.S.C. § 2261(A); (2) a claim pursuant to the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. § 1692(D); (3) a claim of stalking; and (4) a claim of harassment and abuse.  (Dkt. No. 1 at 3, 4.)  As relief, the Complaint sought the "maximum amount of crime victim compensation allotted in WI/NY/Washington DC/Maryland/Virginia areas" and "an immediate injunction against ALL of these defendants."  (Dkt. No. 1 at 5.)

Plaintiff filed a letter to "correct the record that this is a personal injury case" and she is "requesting $75,000 minimum for personal injury punitive damages."  (Dkt. No. 12.)

## II.    PLAINTIFF'S SECOND AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[3]  After reviewing Plaintiff's second amended IFP application (Dkt. No. 14), the Court finds that Plaintiff meets this standard.  Therefore, Plaintiff's second amended application to proceed IFP is granted.[4]

---

[3]    The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[4]    Plaintiff is reminded that, although her IFP application has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

### III.    LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe her pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

First, Plaintiff's Complaint is frivolous and nonsensical. By way of example, in the portion of the Complaint which solicits the facts underlying the claim, Plaintiff alleges as follows:

> There have been multiple occurrences of stalking. Most recently I saw who I think is Anna V. Welch driving a white Chevy Trailblazer outside of WI near the east coast. In the last week I saw a maroon Prius that resembled Samantha Sussek Smith driving the vehicle. I also saw a maroon Prius like that early in 2025 & then one was idoling at a gas station where I was near NY/PA border not parked legally & then I saw one go by on the news in the Washington DC area while I was temporarily working in that area. I have not talked to Kenny in years & I told want trouble from him or his current or ex-wife or any of his friends. Kenny is friends with Anna Vi Welch or was friends with her on FB years ago.

(Dkt. No. 1 at 5 [errors in original].) Moreover, Plaintiff alleges:

> I feel threatened by their stalking behavior. Its harassment & abuse. Kenneth told me years ago that Samantha made fun of him for being friends with me. I have known Kenny for 30 years ago, but I want an injunction against him & this group. Their negativity, stalking, & harassment is threatening to me. I need an injunction against these people.

(*Id*. [errors in original].)

Plaintiff's claims are precisely the type of fanciful or delusional allegations that warrant dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) as factually frivolous. *See, e.g.*, *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002) (holding that suit may be dismissed where facts alleged in complaint are "so nutty ('delusional' is the polite word) that they're unbelievable, even though there has been no evidentiary hearing to determine their truth or falsity"); *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (explaining that an action is frivolous when "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy") (internal quotation marks omitted).

As a result, I recommend that Plaintiff's Complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).

Second, in the alternative, I recommend that Plaintiff's Complaint be dismissed because she fails to state a claim upon which relief may be granted.

More specifically, to the extent that Plaintiff asserts a claim pursuant to 18 U.S.C. § 2261(a), it is a criminal statute and does not "confer a private right of action on Plaintiff." *Flores v. KW Call Center Services*, 26-CV-0122, 2026 WL 1481648, at *3 (N.D.N.Y. May 27, 2026) (Sannes, C.J.). As a result, I recommend that any claims under 18 U.S.C. § 2261(a) be dismissed. *See Fata v. Arcelly*, 26-CV-2185, 2026 WL 1831673, at *7 (E.D. Pa. June 25, 2026) (citing *Weisman v. Baur*, 20-CV-6100, 2021 WL 3403519, at *2 (E.D. Pa. Aug. 4, 2021) (dismissing civil claim brought under 18 U.S.C. § 2261A); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 20-CV-2335, 2021 WL 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) ("[N]umerous federal courts have held that no private right of action exists under [the Violence Against

Women Act, 18 U.S.C. § 2261-2262].")) (holding that "there is no private right of action under [18 U.S.C. § 2261A].").

To state a claim under the FDCPA, "a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA." *Felberbaum v. Sequium Asset Solutions*, 21-CV-9513, 2023 WL 167559, at *3 (S.D.N.Y. Jan. 11, 2023) (citing *Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 WL 1134723, at *3 (E.D.N.Y. Mar. 24, 2017)). The Complaint fails to allege facts plausibly suggesting that (1) Plaintiff is a person who was the object of efforts to collect a consumer debt, (2) Defendants are debt collectors, or (3) that Defendants engaged in an act or omission in violation of the FDCPA. (*See generally* Dkt. No. 1); *Komatsu v. Urban Pathways, Inc.*, 22-CV-9080, 2023 WL 419699, at *9 (S.D.N.Y. Jan. 26, 2023) (citing 15 U.S.C. 1692e) ("In cases where the FDCPA applies, it prohibits deceptive and misleading practices by 'debt collectors.'"). As a result, to the extent that the Complaint is construed as alleging a claim pursuant to the FDCPA, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

Having found that Plaintiff's federal claims are subject to dismissal, I recommend that the Court decline to exercise jurisdiction over any state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if . . . the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness,

7

and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").[5]

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

---

[5]    In the alternative, New York does not recognize private causes of action for stalking, harassment, and abuse, hence, I recommend that those claims be dismissed.  *Graham v. UMG Recordings, Inc.*, 806 F. Supp. 3d 454, 476 (S.D.N.Y. 2025) ("New York does not recognize a civil cause of action for harassment."); *Jones v. L3 Harris*, 730 F. Supp. 3d 26, 29 (W.D.N.Y. 2024) (citing *Robinson v. Williams*, 22-CV-0982, 2023 WL 3352758, at *9 (N.D.N.Y. Jan. 12, 2023) (Lovric, M.J.), *adopted* 2023 WL 2986825 (N.D.N.Y. Apr. 18, 2023)) ("It is well-settled that 'there is no private cause of action for stalking or general harm.'").

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[6]

Here, a better pleading could not cure the deficiencies identified with Plaintiff's claims pursuant to 18 U.S.C. § 2261 and New York claims for stalking, harassment, and abuse. Therefore, I recommend that these claims be dismissed without leave to replead. *Flores v. KW Call Center Services*, 2026 WL 1481648, at *3 (dismissing with prejudice Plaintiff's claims pursuant to 18 U.S.C. § 2261(a)).

However, it is not clear whether a better pleading would permit Plaintiff to assert a cognizable claim pursuant to the FDCPA, 15 U.S.C. § 1692. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to the FDCPA.

If Plaintiff chooses to avail herself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which she relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individuals named as Defendants are involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that

---

[6]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

an amended complaint ordinarily supersedes the original, and renders it of no legal effect."

(internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's second amended application to proceed *in forma pauperis*

(Dkt. No. 14) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED in its**

**entirety** (1) in part without leave to amend to the extent that it asserts claims pursuant to 18

U.S.C. § 2261 and New York claims for stalking, harassment, and abuse; and (2) in part with

leave to amend to the extent that it asserts a claim pursuant to 15 U.S.C. § 1692; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-

Recommendation on the docket of this case and serve a copy upon the parties in accordance with

the local rules.[7]

---

[7]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein
in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: July 8 , 2026
        Binghamton, New York


Miroslav Lovric
U.S. Magistrate Judge

---

[8]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2026 WL 1831673
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

ABRAHIM **FATA**, Plaintiff,
v.
EDWIN **ARCELLY**, et al., Defendants.

CIVIL ACTION NO. 26-2185
|
Filed 06/25/**2026**

**Attorneys and Law Firms**

Abrahim **Fata**, Bethlehem, PA, Pro Se.

## MEMORANDUM

HENRY, J.

**\*1** Plaintiff Abrahim **Fata** commenced this *pro se* civil action against numerous Defendants, asserting that this case primarily arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c); the Civil Rights Act of 1871, 42 U.S.C. § 1985(3); and the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. (*See* ECF No. 2 ("Compl.") at 1.) **Fata** also filed a motion for leave to proceed *in forma pauperis*. For the following reasons, the Court will grant **Fata** leave to proceed *in forma pauperis* and dismiss his Complaint.

## I. FACTUAL ALLEGATIONS [1]

**Fata's** assertions initially relate to the formulation of home plans while he was still in custody, and he alleges that the actions of several defendants "obstruct[ed] the legal 'home plan' process," causing him to remain improperly in custody rather than released on parole prior to the end of his maximum custodial sentence. (*See generally* Compl. at 2-6.) Following his release, **Fata** alleges that several other defendants denied him "legal protection" and either impeded his entry into residential programs or evicted him from programs for arbitrary reasons. (*Id.*) **Fata** claims that all his difficulties in obtaining home plans and securing post release housing are tied to a conspiracy that is "orchestrated to keep [him] in a crisis," and "block the federal courts from hearing [his] case." (*Id.* at 17.)

**Fata** is a frequent litigator in this Court. As in his prior cases, **Fata** continues to allege the existence of a conspiracy that began in 2017 "to coverup a sexual abuse on [his] two kids and to frame [him]" (hereinafter referred to as the "2017 conspiracy"). (*Id.* at 18.) He contends that he's "been severely oppressed by Pennsylvania, and New Jersey societies/communities, and governments, since 2017 ... to the extreme of [his] death, by either manipulating a fatal 'accident' or ... to push [him] to suicide." (*Id.*) **Fata** claims that the conspiracy "started with a Christian religious-based organization, that has invaded the communities" where he and his children reside, and he further alleges that this organization has recruited many relatives and government officials to form an enterprise to "oppress [him] religiously, psychologically, [and] systematically." [2] (*Id.*)

**\*2** In his current Complaint, **Fata** names as Defendants several staff members of Lehigh County Jail ("LCJ") including Edwin **Arcelly** (identified in the Complaint as a case worker); Bob Krasley (identified as a case worker); Tracy Kester (identified as a substitute case worker); Doug Matte and Jim Kremers (identified as "treatment team" members); and Kyle A. Russell (identified as the Warden). (*Id.* at 2.) He also names as Defendants Lehigh County "legal/administrative officials" Marsha Evans (identified as "probation/parole"); District Attorney Jay Jenkins; "Jessica" from "SPORE" [3] and Allentown Police "Detectives" John Lenord, Elizabeth Flores, and "Manning." (*Id.* at 2-3.) **Fata** also names as Defendants four staff members from the Allentown Rescue Mission ("ARM"), identifying them by first name only—Jose ("Intake Manager"), Heather, Sesa, and Paul. (*Id.* at 3.) Finally, he names several "private/institutional staff" members as Defendants including Jess (identified as the Director for the Allentown YMCA); Tiffany (identified as the Supervisor for Bethlehem YMCA); Hanna (identified as the supervisor for Bethlehem Shelter); Mr. Valentine (Victory House); Mr. Meyers (Stephen's House); and James Goss (identified "as a 'lead' and member of the enterprise" who "appear[ed] at the Allentown Rescue Mission chapel to manipulate [**Fata**]"). (*Id.*)

Public dockets reflect that **Fata** was incarcerated at LCJ in connection with probation revocation proceedings. *See Commonwealth v. Fata*, No. CP-39-CR-0004857-2017 (C.P. Lehigh). On January 16, 2024, **Fata's** probation was revoked, and he was sentenced to nine to twenty-three months imprisonment. *Id.* **Fata** claims that he was eligible for early release on July 25, 2024. (Compl. at 6.) In May 2024, **Arcelly** provided **Fata** with some home plan options and told him to

"file for early release." (*Id.*) **Fata** filed a motion for parole, and a hearing was scheduled for July 11, 2024 before Lehigh County Court of Common Pleas Judge Thomas M. Caffrey. (*Id.* at 6-7.) At the hearing, **Fata** asked Judge Caffrey if he could be released to ARM, but District Attorney Jenkins allegedly responded that it "wasn't a good idea." (*Id.* at 7.) **Fata** alleges that Evans and Jenkins "blocked his release path" when Evans asserted that shelters were not an option for home plans [4] and when Jenkins made a statement on the record. (*Id.* at 2, 19.) **Fata's** request for parole was denied. (*Id.* at 7.) **Fata** further claims that Jessica from SPORE falsely claimed that he had a "mental issue" to justify his exclusion from orientation programs. (*Id.* at 2, 19.)

**Fata** claims that after he "return[ed] from court," **Arcelly** ignored him for a week and refused to provide him "with the list of other [home] options." (*Id.* at 2, 7-8.) He contends that **Arcelly** sabotaged his release by "withholding home plan lists" and by obstructing his "ability to communicate with his bank" to arrange for rental payments. (*Id.* at 2, 19.) **Fata** claims that Kester, who substituted for **Arcelly** while he was away on vacation, "oppressed [him]" by providing false information and by failing to give him a list of home plan options. (*Id.* at 2, 7.) **Fata** avers that Matte and Kremers, who supervised the case workers, ignored him and "provided misinformation to subsequent staff ... to perpetuate [his] 'crisis.' " (*Id.*) **Fata** alleges that between July and September 2024, "[he] wrote grievances" regarding the failed attempts to contact his bank and retrieve home plans. (*Id.* at 8.) All his grievances were "denied or rejected wrongfully" by Warden Russell, and Russell dismissed "all grievances regarding the enterprise's interference." (*Id.* at 2, 8, 19.) In December 2024, Krasley began "to oppress [**Fata**] by sending indirect messages" about home plan options. (*Id.* at 9-10.) **Fata** claims that Krasley blocked his release by, *inter alia*, "claiming ignorance of available agencies while providing them to other inmates," seizing his resources list, and utilizing punitive lockdown. (*Id.* at 2, 19.) **Fata** claims that by March 2025, he stopped researching home plan options because he was about to "max out." (*Id.* at 10.) **Fata** was released from LCJ on September 25, 2025, the end date of his custodial sentence. (*Id.*)

**\*3** Following his release from jail, **Fata** walked to ARM but was denied admittance by Jose because of a "fraudulent background check." (*Id.* at 3, 10, 19.) Jose also questioned **Fata's** "mental health to impede entry." (*Id.* at 3.) **Fata** went to the Allentown Police Department ("APD") to clear up his background history, and after explaining to Jose that a prior

assault charge was dismissed, **Fata** was permitted entry to ARM. (*Id.* at 10-11.) **Fata** alleges that ARM staff members didn't like him, and he was "falsely accused" of harassment as a "pretext for program exclusion." (*Id.* at 3.) He claims that other staff members verbally insulted him, and "started singling [him] out and oppressing [him] for eating late" or "for getting more than one cup of water." (*Id.* at 3, 12.) While residing at ARM, **Fata** filed several incident reports with the APD. (*Id.* at 11.) He avers that he "was oppressed by the officers" who "question[ed] [his] mental health." (*Id.* at 11.) **Fata** alleges that he filed a report because "information was deleted from [his] phone" and later filed another report because an ARM volunteer, James Goss, tried to befriend **Fata** even though that individual "and his daughter started a conspiracy against [**Fata**] with a church back in 2017." (*Id.*) **Fata** avers that Goss acted as a "direct liaison between the 2017 conspiracy and current events." (*Id.* at 19.) **Fata** claims that the incident reports he made regarding Goss and others were disregarded by Detectives Lenord, Flores, and Manning, averring that they "ignored physical evidence of organized crime to protect the enterprise." [5] (*Id.* at 11, 19.) On November 17, 2024, **Fata** was "kicked out" of ARM, allegedly "for no legit reason" and he was banned for a year. (*Id.* at 12-13.)

**Fata** then went to the Allentown YMCA and met Jess, the YMCA Director. (*Id.* at 12.) Upon arrival, **Fata** told Jess that he "was a victim of organized crime and there was a conspiracy against [him]." (*Id.* at 12-13.) He got along initially with everyone at the YMCA until a "staff member conspired with Jess to oppress [**Fata**], and Jess started insulting [him]." (*Id.* at 3, 13, 19.) **Fata** alleges that Jess continually insulted him and prevented him from showering, until he "was kicked out on November 30th." (*Id.*) On December 1, 2025, **Fata** went to the APD and made another incident report because information was missing from his phone. (*Id.* at 13.)

**Fata** next went to the Bethlehem Emergency Shelter and advised the staff, including the shelter's supervisor, Hanna, about the "conspiracy" against him. (*Id.*) At some point during his stay, Hanna told **Fata** that there were multiple complaints about him from other residents. (*Id.* at 14-15.) **Fata** claims that a resident named Dave "never stopped provoking" him. (*Id.* at 15.) After his conversation with Hanna, he allegedly found a bible in the area where he usually did his "legal work," and he claims that the placement of the bible was "orchestrated specifically for [him]" in connection with the 2017 conspiracy formed against him. (*Id.* at 15,

18.) **Fata** received several warnings [6] during his stay at the Bethlehem Emergency Shelter and was suspended from the shelter on February 11, **2026**. (*Id.* at 15.) He asked Hanna to provide the names of staff members who "singled [him] out" because he "needed it for [his] case." (*Id.* at 3, 15-16.) Hanna did not respond to him until February 23, **2026**, and because of the "abnormally prolonged response" and refusal "to identify provocateurs," **Fata** "knew" that "Hanna was part of the conspiracy against [him]." (*Id.* at 3, 16.) On March 16, **2026**, **Fata** told Hanna that he was "being targeted" and that the rules were being used "as a weapon" against him. (*Id.* at 3, 17, 19.) **Fata** also told Hanna that people at the shelter were hacking his phone, and he planned to set up "boobie traps" to find out who was in on the conspiracy. (*Id.* at 17.) Hanna told him that he had to leave the shelter that night because he would not follow the rules. (*Id.*) When Hanna suggested the Allentown YMCA, he responded that he would not go there because "they're in on this conspiracy." (*Id.*) **Fata** avers that all Defendants are aware of the 2017 conspiracy, and they "agreed to a 'meeting of the minds' to utilize their official and private capacities to block [his] release and housing stability." (*Id.* at 20.)

**\*4** Based on the foregoing allegations, **Fata** asserts six claims for relief. (*Id.* at 3-5.) The first three claims allege violations of federal criminal statutes. His first claim, "Federal Trafficking and Hostage-Taking," asserts that Defendants "utilized the legal 'home plan' requirement" to "perpetuate [his] detention through coordinated sabotage" in violation of federal criminal statutes that prohibit hostage taking (18 U.S.C. § 1203), forced labor (18 U.S.C. § 1589), and human trafficking (18 U.S.C. § 1595). (*Id.* at 3-4.) He also contends that Defendants Jose, Jess, and Hanna "maintained control via a 'crisis loop' of coordinated evictions" to prevent him from advancing his legal claims and to keep law enforcement from investigating the 2017 conspiracy. (*Id.* at 4, 17.) **Fata's** second claim, "Federal Stalking and Psychological Coercion," alleges that Defendants used "gaslighting and the creation of 'boobie traps' " to place him under substantial emotional distress in violation of the federal criminal statute that prohibits stalking (18 U.S.C. § 2261A). (*Id.* at 4.) He claims that the orchestration of insults by Defendant Jess and certain residents "were tactical weapons" used to impede his "legal standing." (*Id.*) His third claim, "Tampering with Victims and Witnesses," alleges that even though the Defendants were aware of **Fata's** statements regarding the 2017 conspiracy, they "engaged in misleading conduct—including 'filibustering' and misrepresentation of criminal history—to hinder reporting federal offenses" in

violation of the federal statute that criminalizes witness tampering (18 U.S.C. § 1512). (*Id.*)

**Fata's** fourth claim asserts a civil rights conspiracy in violation of 42 U.S.C. § 1985(3). (*Id.*) He contends that "[t]he conspiracy was motivated by class-based (religious) animus," alleging that the "acceptance of an inmate with identical religious views" into a home plan that **Fata** was denied acceptance into is evidence of a conspiracy. (*Id.*) **Fata** further alleges that an email from "Jessica (S.P.O.R.E.) to [ARM] establishes the 'nexus' for state-private liability." (*Id.*) The fifth claim asserts cruel and unusual punishment in violation of the Eighth Amendment, allegedly because **Fata** was moved to " 'the hole' (3C) on September 27, 2024, without penological justification." (*Id.*) He also alleges deliberate indifference because the Defendants "knowingly exacerbat[ed] sleep deprivation—which required a Seroquel prescription—through institutional sabotage." (*Id.*) Finally, in the sixth claim, **Fata** alleges Fourteenth Amendment due process and equal protection violations. (*Id.* at 4-5.) He avers that Defendants arbitrarily denied and obstructed "the legal 'home plan' process" and failed to "provide meaningful administrative review." (*Id.*) He also avers that **Arcelly** and Evans treated him "differently than other similarly situated inmates by claiming facilities were not approved home plans while releasing others to those same facilities." (*Id.* at 5.)

**Fata** claims that because of a "pattern of racketeering," he suffered financial losses including "lost wages from Auto Zone, the depletion of PNC bank funds, and increased transportation costs" because he was "forcibly moved further from his place of employment." (*Id.* at 5, 19-20.) He seeks monetary, punitive, and treble damages in an unspecified amount, and seeks "a permanent injunction against the Defendants to cease all psychological and systemic oppression." (*Id.* at 5.) He also requests that the Court "refer the evidence of criminal violations identified" for criminal prosecution by the United States and/or Pennsylvania Attorney General. (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant **Fata** leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to screen and dismiss the Complaint if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Section 1915(e)(2)(B)(i) requires the Court to dismiss Complaint if it is frivolous, and § 1915(e)(2)(B)(ii) requires dismissal if a complaint fails to

state a claim upon which relief may be granted. A complaint is frivolous if it "lacks an arguable basis either in law or in fact." *Brown v. City of Philadelphia*, 750 F. App'x 171, 173 (3d Cir. 2018) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). The use of the term "frivolous" in § 1915 "embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. Section 1915 accords judges "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless[,]" including claims that describe "fantastic or delusional scenarios[.]" *Id.* at 327-28; *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Smith v. N. Cambria Police*, No. 25-1273, 2025 **WL** 1324070, at *1 (3d Cir. May 7, 2025) (*per curiam*) (quoting *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). A claim is legally baseless if it is "based on an indisputably meritless legal theory." *Deutsch v. United States*, 67 F.3d 1080, 1085 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

**\*5** Whether the Complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the Complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At the screening stage, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the Complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).

As **Fata** is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266

(3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue."). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Vogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 **WL** 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it b[y] name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

### III. DISCUSSION

#### A. Frivolous Claims

**Fata** contends that there is a vast conspiracy to frame him and cover up sexual abuse. (Compl. at 18.) He asserts that the conspiracy, which spans across two states, was started in 2017 by a "Christian religious-based organization" that recruited family members and government officials to oppress him "to the extreme of [his] death, by either manipulating a fatal 'accident' or 'situation' " or push him to commit suicide. (*Id.*)

**Fata** asserts a civil RICO claim based on this conspiracy, alleging that an "association-in-fact enterprise," consisting of all Defendants together with a "Christian religious organization," has been operating "with a shared goal (cover up of 2017 case) where state actors act as 'gatekeepers' and private actors act as 'enforcers.' " (*Id.* at 20.) He avers that the Defendants "agreed to a 'meeting of the minds' to utilize their official and private capacities to block [his] release and housing stability." (*Id.*) **Fata** contends that the enterprise has committed "racketeering acts" designed to sabotage "home plans and housing" to keep him "in a perpetual state of 'crisis' to impede his legal access to federal courts." [7] (*Id.* at 17, 20.)

**\*6** As the Court has advised **Fata** on numerous prior occasions, his allegations that a multistate conspiracy has been formed to push him to suicide or otherwise cause his death are wholly incredible and lack a basis in fact. Accordingly, the Court will dismiss any claims based on these allegations as factually baseless, without leave to amend. *See, e.g., Caterbone v. Nat'l Sec. Agency*, 698 F. App'x 678, 679 (3d Cir. 2017) (*per curiam*) (dismissing appeal as

lacking an arguable basis in fact where underlying allegations were based on plaintiff's assertion that he was a "victim of U.S. sponsored mind control and cointelpro harassment program"); *Mina v. Chester County*, 679 F. App'x 192, 195 (3d Cir. 2017) (*per curiam*) (affirming dismissal of plaintiff's claims that 62 defendants had a vast conspiracy against him spanning twenty years); *Price v. Fed. Bureau of Investigation*, No. 20-3015, 2020 **WL** 4368063, at *3 (E.D. Pa. July 30, 2020), *aff'd*, 845 F. App'x 106 (3d Cir. 2021) (finding plaintiff's allegations to be factually frivolous where plaintiff asserted that "numerous law enforcement agencies, attorneys, prison officials, and medical professionals have used neurological and psychological technology to control the 'four basic groups of his brain and mental functions' and "that the use of this 'technology' and 'mind control' has caused him numerous impairments and drove him to criminal and erratic behavior"); *Jorge v. Torres*, No. 18-14674, 2019 **WL** 2385942, at *3 (D.N.J. June 6, 2019) ("Plaintiff's factual allegations that the Police are monitoring his every move and that the Police do so by telephone recruitment 'of informants, spies, and willing constituates [sic]' is exactly the type of 'fantastic or delusional scenario[ ]' warranting dismissal under 28 U.S.C. § 1915(e)(2)(B)(i)." (alterations in original)).

Moreover, **Fata's** RICO claims are legally baseless. RICO "makes it unlawful 'for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.' " *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010) (quoting 18 U.S.C. § 1962(c)). To state a civil RICO claim, a plaintiff must plausibly allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* (internal quotations omitted). " 'Racketeering activity' is defined in the RICO statute to comprise the state law offenses of murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and dealing in a controlled substance or listed chemical, as well as several federal offenses such as mail and wire fraud." *Talley v. Halpern ex rel. Est. of Winderman*, No. 05-4184, 2005 **WL** 2002611, at *4 (E.D. Pa. Aug. 16, 2005) (citing 18 U.S.C. § 1961(1)). "According to the RICO statute, a 'pattern of racketeering activity' requires at least two acts of racketeering activity within a ten-year period." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 363 (quoting 18 U.S.C. § 1961(5)). Additionally, a plaintiff must have sustained "injury to business or property"

caused by the alleged RICO violation to bring a RICO claim. *Maio v. Aetna, Inc.*, 221 F.3d 472, 482–83 (3d Cir. 2000).

**Fata** does not allege any conduct that could be considered racketeering activity for purposes of setting forth a legal basis for a RICO claim. *See Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("The claim that the defendants [including numerous judges, staff attorneys, and an assistant united states attorney] engaged in a RICO conspiracy by failing to properly address issues on appeal and 'bribing' witnesses to testify pursuant to plea agreements lacks any arguable basis in law and was properly dismissed as frivolous."); *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012) ("[C]onclusory allegations that defendants conspired for the purpose of defrauding [Mierzwa] are simply inadequate to plead a valid RICO claim.") **Fata's** conclusory allegations that more than twenty individuals employed by approximately ten different county, city, or private entities conspired with an unidentified "Christian religious-based organization" for the purpose of sabotaging his "home plans and housing" are inadequate to plead a valid RICO claim and he fails to allege any injury to his business or property. Accordingly, his civil RICO claims will be dismissed as legally baseless, without leave to amend. There are additional reasons, however, as to why **Fata's** claims cannot proceed.

### B. Civil Claims Based on Criminal Statutes

**\*7** **Fata** cites several federal criminal statutes in his Complaint, namely 18 U.S.C. § 1203 (hostage taking), § 1512 (witness tampering), § 1589 (forced labor), and § 2261A (stalking). (Compl. at 1-2). To the extent he seeks to assert civil liability based on those statutes, his claims are not plausible because criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (*per curiam*) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."). Indeed, the United States Supreme Court has stated that, unless specifically provided for, federal criminal statutes rarely create private rights of action. *Nashville Milk Co. v. Carnation Co.*, 355 U.S. 373, 377 (1958) (stating that where a statute "contains only penal sanctions for violation of it provisions; in the absence of a clear expression of congressional intent to the contrary, these sanctions should under familiar principles be considered exclusive, rather than supplemented by civil sanctions of a distinct statute"); *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) ("We have been quite reluctant to infer a private right of action from a criminal prohibition

alone.""). The fact that a federal statute has been allegedly violated and some person harmed does not automatically give rise to a private cause of action for the injured person. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979); *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979).

Claim one of **Fata's** Complaint asserts federal trafficking and hostage taking in violation of 18 U.S.C. §§ 1203, 1595, and 1589. (Compl. at 3-4.) However, the hostage taking statute, § 1203, does not give rise to civil liability. *Rodriguez v. City of Salem*, No. 23-01863, 2024 **WL** 4546365, at *4 (D. Or. Oct. 2, 2024), *report and recommendation adopted*, 2024 **WL** 4544317 (D. Or. Oct. 22, 2024) (concluding that 18 U.S.C. § 1203 "is part of federal criminal code, and there is no indication of a congressional intent to create a private right and private remedy"); *Kelly v. City of New Philadelphia*, No. 11-474, 2011 **WL** 3705151, at *2 n.3 (N.D. Ohio Aug. 22, 2011) (stating that 18 U.S.C. § 1203 does not provide for "a private right of action"). **Fata's** claims pursuant to the TVPRA, which encompasses 18 U.S.C. §§ 1589 and 1595, are also not plausible. Specifically, § 1589 does not provide a basis for a private cause of action. *See Brown v. U.S. Dist. Ct. for the E. Dist. of Pa.*, No. 18-747 (E.D. Pa.) (Apr. 19, 2018 Order at 6 (dismissing claims under 18 U.S.C. § 1589 as "meritless and frivolous")), *aff'd*, 740 F. App'x 239, 240 (3d Cir. 2018) (*per curiam*). Although 18 U.S.C. § 1595 provides for a civil remedy for violations of the TVPRA, **Fata** fails to allege any facts suggesting that Defendants either forced him into labor, trafficked him for forced labor, or benefitted financially from peonage or forced labor.[8] *See Brown v. U.S. Dist. Ct. for E. Dist. of Pa.*, No. 18-1108, 2018 **WL** 11463543, at *3 (E.D. Pa. Apr. 19, 2018), *aff'd sub nom., Brown v. City of Phila. Off. of Hum. Res.*, 735 F. App'x 55 (3d Cir. 2018).

In **Fata's** second claim, he alleges federal stalking and psychological coercion in violation of 18 U.S.C. § 2261A, but, again, there is no private right of action under that statute. *See Weisman v. Baur*, 2021 **WL** 3403519, at *2 (E.D. Pa. Aug. 4, 2021) (dismissing civil claim brought under 18 U.S.C. § 2261A); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, 2021 **WL** 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) ("[N]umerous federal courts have held that no private right of action exists under [the Violence Against Women Act, 18 U.S.C. §§ 2261-2262].").

**\*8** Finally, in claim three, **Fata** asserts tampering with victims and witnesses in violation of 18 U.S.C. § 1512. (Compl. at 4.) However, the federal witness tampering statute, § 1512, does not provide a private cause of action. *Shaw v.*

*City of Philadelphia*, No. 25-2941, 2025 **WL** 1689393, at *3 (E.D. Pa. June 13, 2025) (citing *Palencia v. N. Point Veterans Program-Turning Point*, No. 20-1691, 2020 **WL** 7059557, at *1 (W.D. Pa. Dec. 2, 2020) ("18 U.S.C. § 1512 is a criminal statute that does not create a private cause of action.")).

**Fata** also cites 18 Pa. Cons. Stat. §§ 4911 (tampering with public records or information) and 5301 (official oppression) as a basis for claims. (Compl. at 2.) Courts, including the United States Court of Appeals for the Third Circuit, routinely dismiss claims seeking to impose civil liability under various sections of the Pennsylvania Crimes Code, finding that the "Code gives no authority for a private cause of action and none has been implied." *Youst v. Roth*, No. 23-0848, 2023 **WL** 3821813, at *4 (E.D. Pa. June 5, 2023) (quoting *Martrano v. Quizno's Franchise Co.*, No. 08-0932, 2009 **WL** 1704469, at *12 (W.D. Pa. June 15, 2009)); *see also Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020) (*per curiam*) (recognizing that plaintiff's civil claims brought pursuant to the Pennsylvania Crimes Code were properly rejected by the district court because there was no private right of action available under the Code); *Abouloh v. Lehigh Cnty. Prison*, No. 25-3377, 2025 **WL** 2654904, at *8 (E.D. Pa. Sept. 15, 2025). Accordingly, **Fata's** claims based on these criminal statutes will be dismissed with prejudice.

Similarly, any claims alleging criminal liability or a violation of a criminal statute as a basis for civil liability are dismissed with prejudice. (*See* Compl. at 5 wherein **Fata** seeks relief in the form of "criminal investigation and prosecution.") "A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (finding that a citizen lacks standing to contest prosecutorial policies "when he himself is neither prosecuted nor threatened with prosecution.") (citations omitted). **Fata** cannot compel a criminal investigation by filing a complaint with this Court because the United States District Courts have no authority to order any law enforcement agencies or prosecutors to initiate investigations or prosecutions. *See Wagner v. United States Gov't*, No. 23-1626, 2023 **WL** 3948820, at *1 (D.D.C. June 9, 2023) (citing *Otero v. U.S. Attorney General*, 832 F.2d 141, 141-42 (11th Cir. 1987); *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982)). "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Wagner*, 2023 **WL** 3948820, at *1 (quoting *Heckler v. Chaney*, 470 U.S. 821, 831 (1985)); *see also Smith v. Friel*, No. 19-943, 2019 **WL** 3025239, at *4 (M.D. Pa.

June 4, 2019), *report and recommendation adopted*, 2019 WL 3003380 (M.D. Pa. July 10, 2019) (collecting cases and stating "courts have long held that a civil rights plaintiff may not seek relief in civil litigation in the form of an order directing the criminal prosecution of some third parties").

### C. Civil Rights Conspiracy Claims

**\*9** **Fata's** fourth claim alleges a civil rights conspiracy in violation of 42 U.S.C. § 1985(3). (Compl. at 1, 4.) This section creates a cause of action against any two persons who "conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3). To state a plausible claim under § 1985(3) a plaintiff must allege the following elements: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property or the deprivation of any right or privilege of a citizen of the United States. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). Significantly, the "language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 835 (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"); *Hauptmann v. Wilentz*, 570 F. Supp. 351, 386 (D.N.J. 1983) ("If the conspiracy only affects the plaintiff individually, the allegations will not satisfy the class-based animus requirement."), *aff'd sub nom., Appeal of Hauptmann*, 770 F.2d 1070 (3d Cir. 1985).

Moreover, a plaintiff must allege specific facts to state a plausible § 1985(3) claim. *Robinson v. McCorkle*, 462 F.2d 111, 113 (3d Cir. 1972) ("With near unanimity, the courts have rejected complaints containing mere conclusory allegations of deprivations of constitutional rights protected under § 1985(3). A conspiracy claim based upon § 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."); *Grigsby v. Kane*, 250 F. Supp. 2d 453, 458 (M.D. Pa. 2003) ("[O]nly allegations which are particularized, such as

those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient."). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556. **Fata's** claims fail for several reasons. First, there is no allegation that a conspiracy was motivated by race or a class-based discriminatory animus as required by § 1985(3). **Fata** does not identify his race, nor does he make any allegation that race was the motivation behind the Defendants' alleged actions. Although **Fata** conclusively asserts that the "conspiracy was motivated by class-based (religious) animus" (Compl. at 4), the Complaint does not allege **Fata's** membership in any religion, nor does it suggest that any of the Defendants named harbored discriminatory animus against him on the basis of his religion. [9] Also, **Fata** asserts the existence of a conspiracy only in conclusory terms and provides no facts from which a conspiratorial agreement may be inferred. *Groce v. City of Phila. L. Dep't*, No. 21-5132, 2022 WL 493418, at \*7 (E.D. Pa. Feb. 17, 2022) (dismissing conspiracy claim as wholly conclusory where the plaintiff failed to alleged facts regarding the formation of a conspiracy between any Defendants or any other individuals, the period of the conspiracy, or actions taken by the alleged conspirators to achieve the alleged purpose thereof). **Fata's** § 1985(3) claims are not plausible and will be dismissed.

### D. Due Process Claims

**\*10** **Fata** alleges that the Defendants' actions in "arbitrarily denying and obstructing the 'legal' home plan process," resulted in the denial of his procedural due process rights under the Fourteenth Amendment. (Compl. at 4.) He also claims, without further explanation, that he was denied "meaningful administrative review." (*Id.* at 4-5.) Liberally construing his claims, **Fata** alleges that Defendants somehow caused him to remain improperly in custody rather than released on early parole at some point prior to the end of his maximum custodial sentence. The Court can discern no claim that rises to the level of a due process violation. [10]

The Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. An examination of a procedural due process claim under the Fourteenth Amendment proceeds in two

steps. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972). First, the court must determine whether there exists a liberty or property interest which has been interfered with by the state. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citing *Bd. of Regents*, 408 U.S. at 571). Second, if and only if a petitioner establishes the existence of a protected interest, the court must examine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Id.*

A convicted individual has no constitutionally protected liberty interest in parole or otherwise being released before the expiration of a valid sentence. *See Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Thomas v. Buechele*, 569 F. App'x 93, 95 (3d Cir. 2014) (concluding no due process violation caused by delayed parole because the plaintiff had "not alleged the deprivation of a protected liberty interest"). Thus, if prisoners in Pennsylvania have a protected liberty interest in some aspect of their parole, it must derive from Pennsylvania law. *See Sandin v. Conner*, 515 U.S. 472, 483-84 (1995) (recognizing that "States may ... create liberty interests which are protected by the Due Process Clause").

**\*11** The statutes governing Pennsylvania's Board of Probation and Parole, however, do not grant state prisoners any constitutionally protected liberty interest in being released on parole prior to the expiration of their controlling maximum sentences. *See Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (recognizing the general principle that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled); *Coady v. Vaughn*, 770 A.2d 287, 289 (Pa. 2001) ("It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same."). Since Fata has no constitutionally protected liberty interest in parole or any parole procedures, any due process violation based on Defendants' actions that allegedly led to his loss of parole necessarily must fail. *See, e.g., Newman v. Beard*, No. 06-214, 2008 WL 2149605, at \*2 (W.D. Pa. May 21, 2008) (claim for violation of due process based on deficient parole procedures in interview conducted by the Pennsylvania Board of Probation and Parole fails because there is no liberty interest in parole or any of its procedures); *Nellom v. Luber*, No. 02-2190, 2004 WL 816922, at \*10 (E.D. Pa. Mar. 18, 2004) (due process claim based on parole procedures fails because there is no constitutionally protected liberty interest

in either being granted parole or having a parole hearing). For these reasons, any claims related to the loss of parole do not allege a separate violation of Fata's due process rights or otherwise state a plausible constitutional claim.

### E. Claims Based on Grievances

Fata asserts in part that Warden Russell "rejected wrongfully" numerous grievances he made with respect to his attempts to secure home plans. (*See* Compl. at 8.) The Court has already dismissed any due process claims against Defendants based on Fata's denial of parole. To the extent Fata also asserts a stand-alone claim based on the grievance process, it too is dismissed because "prisoners do not have a constitutional right to prison grievance procedures." *Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*) (citing *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) and *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (*per curiam*)). Accordingly, allegations such as those raised by Fata predicated on failures of the grievance process or improper handling of or response to grievances do not give rise to a constitutional claim. *See Woods v. First Corr. Med. Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (*per curiam*) ("We agree with the District Court that because a prisoner has no free-standing constitutional right to an effective grievance process, Woods cannot maintain a constitutional claim against Lucas based upon his perception that she ignored and/or failed to properly investigate his grievances." (internal citation omitted)); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)).

### IV. CONCLUSION

For the foregoing reasons, the Court will dismiss Fata's Complaint in its entirety as frivolous and for failure to state a claim, pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and (ii). Leave to amend will not be given as any attempt to amend would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). An appropriate order follows.

### All Citations

Slip Copy, 2026 WL 1831673

**Footnotes**

1    The allegations set forth in this Memorandum are taken from **Fata's** Complaint (ECF No. 2) and state court dockets of which this Court may take judicial notice. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court has also considered the Exhibits filed by **Fata** on April 8, **2026**. *See* ECF No. 5. The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system. Grammar, spelling, and punctuation errors in quotes from **Fata's** submissions are cleaned up where necessary.

2    The allegations in **Fata's** "2nd Statement of Claim" (*see* Compl. at 18) are repetitive to those made in **Fata's** prior cases. *See* Civil Action Nos. 24-2402, 24-4862, 24-6934, 24-6935, and 24-6936. In these cases, **Fata** alleged that more than fifty different individuals, family members, attorneys, state and federal law enforcement agencies, and governmental entities from Pennsylvania and New Jersey had participated in a years-long conspiracy to cover up a 2017 crime inflicted on his son. In each case, the Court dismissed **Fata's** conspiracy claims as factually baseless. **Fata** appealed the dismissal of his Complaint in each case, and the United States Court of Appeals for the Third Circuit affirmed in all cases.

3    The Specialized Program Offering Recovery and Education ("SPORE") "is a partnership between the Office of Lehigh County Mental Health and the Juvenile Probation Department that provides a mental health caseworker and a probation officer to jointly and intensively supervise consumers who experience severe [mental health] problems." *See* Lehigh County, Pennsylvania, https://www.lehighcounty.org/Departments/Human-Services/Mental-Health/Adult-Mental-Health/-Case-Management (last visited June 12, **2026**).

4    Public dockets reflect that Judge Caffrey entered orders on October 23, 2024 and November 20, 2024 denying **Fata's** motions for release to ARM. *See Fata*, No. CP-39-CR-0004857-2017.

5    **Fata** avers that the detectives denied him legal protection, ignored his request for a PFA against Goss, and "discarded physical evidence provided on an SD card regarding the 2017 conspiracy." (Compl. at 3.)

6    **Fata** received warnings for leaving the shelter after 7:00 a.m., not making his bed, bringing food into the shelter and eating it in the hallway, printing documents at 1:00 a.m., using his cell phone, and smoking cigarettes. (Compl. at 14-16.)

7    As part of his assertion that he was being "oppressed by the staff" at LCJ, **Fata** avers that he was "wrongfully" moved to "the hole" on September 27, 2024, "without penological justification." (Compl. at 4, 8.) He also alleges Defendants "knowingly exacerbate[ed] sleep deprivation—which required a Seroquel prescription —through institutional sabotage." (*Id.*) **Fata's** passing references to "cruel and unusual punishment" and "deliberate indifference" are unsupported by underlying allegations and thus insufficient to assert a plausible claim. *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court.") (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).

Moreover, in the prison context, "[d]ue process protection for a state created liberty interest is ... limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest." *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486). In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for thirty days did not deprive the inmate of a protected liberty interest. *See Sandin*, 515 U.S. at 486; *see also Williams v. Bitner*, 307 F. App'x 609, 611 (3d Cir. 2009) (no liberty interest triggered by 90-day placement in disciplinary

segregation); *Smith*, 293 F.3d at 654 (no liberty interest triggered by seven-month placement in disciplinary confinement).

8    As a convicted inmate in custody for a parole violation, **Fata** also has no constitutional claim arising from forced labor while he was incarcerated. *See Dmytryszyn v. Hickenlooper*, 527 F. App'x 757, 760 (10th Cir. 2013) (holding that in the context of a convicted prisoner, the courts have held that prisoners have no Thirteenth Amendment or liberty or property interest in payment for their work and may be lawfully compelled to work) (nonprecedential).

9    **Fata** avers that the "evidence" supporting this claim is "the acceptance of an inmate with identical religious views" into Jubilee Ministries, while **Fata** was denied acceptance. (Compl. at 4.) **Fata** alleges that he was provided an application by Krasley, and he filled out the application and provided his "perspective on religion." (*Id.* at 9.) He alleges that the other inmate with "the very same perspective" was granted admittance and released from prison. (*Id.*) **Fata**, however, received "an abnormal denial letter" from Mark Habecker, who is not named as a Defendant, indicating that **Fata** "was 'not teachable' following a review of [his] religious perspective essay." (*Id.* at 9, 25.)

10    **Fata** also mentions that "Defendants **Arcelly** and Evans intentionally treated [him] differently than other similarly situated inmates" because they allegedly released other inmates to facilities while allegedly telling him that those facilities "were not approved home plans." (Compl. at 5.) **Fata's** mere recitation of the Fourteenth Amendment's Equal Protection Clause in the same claim as his due process claim fails to allege a separate plausible claim. To plead an equal protection violation plausibly, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class." *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) (citing *Hassan v. City of New York*, 804 F.3d 277, 294, 298 (3d Cir. 2015)). "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.' " *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted). **Fata** does not allege that he is a member of a protected class or explain how he was discriminated against based on that membership. He also fails to allege how he was treated differently than other similarly situated inmates who were not in a protected class. *See Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) ("At the motion to dismiss stage, Perano must allege facts sufficient to make plausible the existence of such similarly situated parties."); *Carson v. Mulvihill*, 488 F. App'x 554, 563 (3d Cir. 2012) (rejecting equal protection claim when inmate did "not allege facts showing that he was similarly situated to the inmates" who received accommodations "or that there was no rational basis for his different treatment"); *Beitler v. City of Allentown*, No. 22-104, 2022 WL 768151, at *8 (E.D. Pa. Mar. 14, 2022) ("We should dismiss the claim when an incarcerated person fails to identify similarly situated individuals being treated differently."). Accordingly, any equal protection claim must be dismissed.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 22 of 74

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,
v.
Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. *Ruffolo,* 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the
additional allegations fail to cure the deficiency which

forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo*

determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See Camardo v. General Motors Hourly–Rate Employees Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also Scipio v. Keane,* 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P. 72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is

Case 1:25-cv-01838-AMN-ML   Document 15   Filed 07/08/26   Page 24 of 74

Brown v. Peters, Not Reported in F.Supp. (1997)

no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

### CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

### ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim.*

### BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams, the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992,

Case 1:25-cv-01838-AMN-ML   Document 15   Filed 07/08/26   Page 25 of 74

**Brown v. Peters, Not Reported in F.Supp. (1997)**

upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork

relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that

defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

## CONCLUSION

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 27 of 74

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir.1993)* (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

---

**Footnotes**

1    I note, however, that the report-recommendation would survive even *de novo* review.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Cohen v. Ditech Financial LLC, Not Reported in Fed. Supp. (2017)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 28 of 74

2017 WL 1134723
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Aaron COHEN, on behalf of himself and
all others similarly situated, Plaintiff,
v.
DITECH FINANCIAL LLC, and Rosicki,
Rosicki & Associates, P.C., Defendants.

15-CV-6828
|
Signed 03/24/2017

**Attorneys and Law Firms**

LAW OFFICES OF SHIMSHON WEXLER, PC, BY: Shimshon Wexler, Esq., 315 W. Ponce de Leon Ave., Suite 250, Decatur, Georgia 30030, Attorney for Plaintiff.

BALLARD SPAHR LLP, BY: Justin Angelo, Esq., 919 Third Avenue, Floor 37, New York, New York 10022, Attorneys for Defendant Ditech Financial LLC.

RIVKIN RADLER, LLP, BY: Carol A. Lastorino, Esq., 926 RXR Plaza, Uniondale, New York 11556, Attorneys for Defendant Rosicki, Rosicki & Associates, P.C.

MEMORANDUM AND ORDER

LEONARD D. WEXLER, UNITED STATES DISTRICT JUDGE

**\*1** Plaintiff Aaron Cohen ("Cohen" or "Plaintiff") commenced this action, on behalf of himself and as a putative class action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* by defendants Ditech Financial LLC ("Ditech") and Rosicki, Rosicki & Associates, P.C. ("Rosicki"). Specifically, he seeks statutory damages, attorneys' fees, and costs for violations to § 1692e and § 1692g(a)(2) of the FDCPA. Currently before the Court are each defendant's motion to dismiss pursuant Rule 12 (b)(6) of the Federal Rules of Civil Procedure. *See* Rosicki Motion, Docket Entry ("DE") [24]; Ditech Motion, DE [29]. For the reasons set forth herein, both motions are granted and the complaint is dismissed.

**I. BACKGROUND**

**A. Factual Allegations and State Foreclosure Action** [1]
On or about August 11, 2005, Cohen incurred a debt in the form of a mortgage loan. Complaint, DE [1], ¶ 15. The mortgage was assigned on more than one occasion, the last assignment occurring on June 10, 2013 to Green Tree Servicing LLC ("Green Tree"). *See* Foreclosure Complaint ¶ 4, Declaration of Carol A. Lastorino ("Lastorino Decl."), Ex. B, DE [25]. On March 11, 2015, Green Tree commenced a foreclosure proceeding in state court (the "Foreclosure Action") upon Plaintiff's default on his mortgage payments in 2009. *See* Foreclosure Compl. ¶ 7. After the foreclosure action was filed, Green Tree changed its name to Ditech. [2]

After the foreclosure complaint was filed, Plaintiff received two additional documents in furtherance of the Foreclosure Action: a Certificate of Merit Pursuant to CPLR 3012-b ("Certificate") and a request for judicial intervention ("RJI"). Compl. ¶ 23. The Certificate is dated March 11, 2015, bears the same caption as the Foreclosure Complaint, and certifies that plaintiff Green Tree "is the creditor entitled to enforce rights" under the pertinent documents. Certificate ¶2, Lastorino Decl. Ex. C. The RJI uses the same caption as the Foreclosure Complaint, indicates that the nature of the action is a Real Property—Mortgage Foreclosure, and purports to seek a "Residential Mortgage Foreclosure Settlement Conference." Lastorino Decl. Ex. D. Green Tree is designated as the Plaintiff, but there is no language identifying it as the "creditor."

**\*2** In the Foreclosure Action, Green Tree seeks *inter alia* that the mortgaged premises be sold, that plaintiff be paid monies owed from the proceeds of the sale, and that Aaron Cohen "be adjudged to pay any deficiency which may remain." Foreclosure Compl., Wherefore Cl.

**B. Complaint in This Action**
The complaint in the case before this Court alleges a single cause of action for violations of two sections of the FDCPA. Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692g provides in pertinent part as follows:

(a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing

...

> (2) the name of the creditor to whom the debt is owed

15 U.S.C. § 1692g(a)(2).

The basis of Plaintiff's complaint is that the creditor to whom the debt was owed at the time of the filing of the foreclosure complaint was Fannie Mae, not Green Tree. Compl. ¶¶ 21-22. Plaintiff claims that defendants violated § 1692e in that they "falsely stated that Green Tree Loan Servicing LLC was the creditor to whom the Plaintiff's debt ... was owed when, in fact, Green Tree Servicing, LLC was not the creditor to whom the Plaintiff's debt ... was owed." Compl. ¶ 31. In addition, after making an "initial communication," neither Rosicki nor Green Tree advised Plaintiff of the "correct name of the creditor to whom the debt is owed." Compl. ¶ 33.

## II. LEGAL STANDARDS

Defendants seek dismissal of the action pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The standards for analyzing a motion to dismiss are well-established. The court must accept the factual allegations in the complaints as true and draw all reasonable inferences in favor of the plaintiff. *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 113 (2d Cir. 2013) (citations omitted). The court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.' " *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S at 678 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

The determination of "whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S at 679. A pleading that does nothing more than recite bare legal conclusions, however, is insufficient to "unlock the doors of discovery." *Iqbal,* 556 U.S. at 678-679; *see also Twombly,* 550 U.S. at 555 (holding that a "formulaic recitation "formulaic recitation of cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level."). While Rule 8 does not require "detailed factual allegations," it does require more than an "unadorned,

the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

## III. DISCUSSION

**\*3** The FDCPA was enacted "with the aim of eliminating abusive practices in the debt collection industry." *Jacobson v. Healthcare Fin. Servs., Inc.,* 516 F.3d 85, 89 (2d Cir. 2008) (quoting 15 U.S.C. § 1692e). This legislation and its history "emphasize the intent of Congress to address the previously common and severe problem of abusive debt collection practices and to protect unsophisticated consumers from unscrupulous debt collection tactics." *Ehrich v. Credit Prot. Ass'n, L.P.,* 891 F. Supp. 2d 414, 415 (E.D.N.Y. 2012) (citations omitted). The FDCPA "focuses on regulating interactions between 'debt collectors' and 'consumers.' " *Ellis v. Solomon and Solomon, P.C.,* 591 F.3d 130, 134 (2d Cir. 2010). To establish a claim under the FDCPA, a plaintiff must establish that: (1) he is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a "debt collector"; and (3) the defendant has engaged in some act or omission in violation of the FDCPA's requirements. *See Scaturro v. Northland Grp., Inc.,* 16-cv-1314, 2017 WL 415900, at * (E.D.N.Y. Jan. 9, 2017).

The threshold question here is whether the communications at issue, filings during a foreclosure action, constitute an attempt to collect a debt within the meaning of the FDCPA. The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). While the note is a debt, the mortgage " 'is a type of security interest with real property as the collateral,' that a lender can take if a debtor does not fulfill a payment obligation; it 'is not a promise to pay a debt.' " *Hill v. DLJ Mortg. Capital, Inc.,* 15-CV-3083, 2016 WL 5818540, at \*7 (E.D.N.Y. Sept. 30, 2016) (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP,* 678 F.3d 1211, 1216 (11th Cir. 2012)). In other words, "[t]he note represents the primary personal obligation of the mortgagor, and the mortgage is merely the security for such obligation." *Copp v. Sands Point Marina, Inc.,* 17 N.Y.2d 291, 293, 217 N.E.2d 654, 270 N.Y.S.2d 599 (1966).

In recognition of this distinction, a holder of a note secured by a mortgage has two remedies under New York law: "one at law in a suit on the debt as evidenced by the note, the other

in equity to foreclose the mortgage." *Copp,* 17 N.Y.2d at 293; *see also Westnau Land Corp. v. U.S. Small Bus. Admin.,* 1 F.3d 112, 115 (2d Cir. 1993) ("under New York law, a creditor is required to elect between the remedies of an action for money damages on a debt or an equitable action to foreclose a mortgage that secures the debt."); *Wells Fargo Bank, N.A. v. Goans,* 136 A.D.3d 709, 24 N.Y.S.3d 386 (2d Dep't N.Y. App. Div. 2016) ("Where a creditor holds both a debt instrument and a mortgage which is given to secure the debt, the creditor may elect either to sue at law to recover on the debt, or to sue in equity to foreclose on the mortgage."). It is also clear that under New York law, a mortgage foreclosure is an equitable remedy and an action seeking that relief is equitable in nature. *See 4 B's Realty 1530 CR39, LLC v. Toscano,* 818 F. Supp. 2d 654, 659 (E.D.N.Y. 2011); *see also Notey v. Darien Constr. Corp.,* 41 N.Y.2d 1055, 364 N.E.2d 833, 396 N.Y.S.2d 169 (1977) ("An action to foreclose a mortgage is, of course, in equity").

Courts in this Circuit that have considered whether actions taken within a foreclosure action constitute debt collection "have held that 'the enforcement of a security interest through foreclosure proceedings that do not seek monetary judgments against debtors is not debt collection for purposes of the FDCPA.' " *Hill,* 2016 WL 5818540, at *7 (quoting *Boyd v. J.E. Robert Co.,* No. 05-CV-2455, 2013 WL 5436969, at *9 (E.D.N.Y. Sept. 27, 2013), *aff'd on other grounds,* 765 F.3d 123 (2d Cir. 2014)). This Court agrees with this reasoning. Here, Green Tree elected to commence an action to foreclose on the mortgage and the "communications" at issue were made in the context of enforcing its security interest. As such, there was no attempt to enforce a debt actionable under the FDCPA.

**\*4** Plaintiff argues that the Foreclosure Action does seek a money judgment on the "debt" because it seeks a deficiency judgment against Cohen in the event that the proceeds of the sale of the mortgaged property are insufficient to satisfy the amount owed. Article 13 of the Real Property Actions and Proceedings Law ("RPAPL") governs actions to foreclose a mortgage in New York. It expressly provides that a final judgment in a foreclosure action may include a deficiency judgment against the person liable for the debt secured by the mortgage "of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds." RPAPL § 1371(1). Plaintiff cites no case law to support the inference that this provision somehow affects the nature of the Foreclosure

Action or changes it from an equitable proceeding to one at law. Indeed, such a result would violate New York's election of remedies framework. *See Boyd v. Jarvis,* 74 A.D.2d 937, 937, 426 N.Y.S.2d 142 (3rd Dep't 1980) (rejecting plaintiffs' attempt to commence a second action at law and noting that as they had elected to proceed in equity by seeking foreclosure, they should have sought a deficiency judgment in the foreclosure action); *see also Wyoming Cty. Bank & Trust Co. v. Kiley,* 75 A.D.2d 477, 481, 430 N.Y.S.2d 900, 903 (4th Dep't 1980) ("when a mortgage-secured creditor commences an equitable action to foreclose its mortgage, the action does not result in a 'money judgment' ").

In any event, under the facts presented in this case, the Court finds that the purposes of the FDCPA are not furthered by continuation of this action. Acknowledging the procedures and protections available in bankruptcy court, the Second Circuit has noted that given that "the FDCPA's purpose is to protect unsophisticated consumers from unscrupulous debt collectors, that purpose is not implicated when a debtor is instead protected by the court system and its officers." *Simmons v. Roundup Funding, LLC,* 622 F.3d 93, (2d Cir. 2010) (internal quotation and citation omitted). Applying the same reasoning, a District Court in Connecticut analyzed Connecticut law and determined that "mortgagors in a foreclosure proceeding likewise do not need protection from abusive collection methods that are covered under the FDCPA because the state foreclosure process is highly regulated and court controlled." *Derisme v. Hunt Leibert Jacobson P.C.,* 880 F. Supp. 2d 311, 327 (D. Conn. 2012). The same rationale is applicable to foreclosure proceedings in New York courts.

In the aftermath of the mortgage foreclosure crisis, New York passed the Foreclosure Prevention and Responsible Lending Act which strengthened and added protections for borrowers in jeopardy of losing their homes. Stronger notice provisions were implemented, covering a variety of circumstances and intending to protect borrowers. *See* RPAPL § 1303 (requiring "Help for Homeowners in Foreclosure" notice); RPAPL § 1304 (requiring additional notices in connection with subprime or non-traditional home loans); RPAPL § 1320 (requiring a special summons in actions to foreclose a mortgage on private residences). Certain filings with the Superintendent of Financial Services are also required. *See* RPAPL § 1306. The parties are now required to participate in mandatory, court-supervised settlement proceedings at which they Eire required to "negotiate in good faith to reach a mutually agreeable resolution, including but not limited to a loan modification, short sale, deed in lieu of

Cohen v. Ditech Financial LLC, Not Reported in Fed. Supp. (2017)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 31 of 74

foreclosure or any other loss mitigation, if possible." RPAPL § 3408. The New York court system can amply protect borrowers from any allegedly unscrupulous actions taken in the foreclosure proceeding. Accordingly, the purposes of the FDCPA are not implicated, especially where all the allegedly impermissible conduct occurred within the context of the foreclosure proceeding.

## IV. CONCLUSION

Both Defendants' motions to dismiss are granted, and the case is closed.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 1134723

---

### Footnotes

1    The facts are taken from the Complaint and from documents related to the state court foreclosure action. *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.,* 758 F. Supp. 2d 153, 158 n.4 (E.D.N.Y. 2010) (In deciding a motion to dismiss, the Court may, in addition to the complaint, consider documents incorporated by reference into the complaint as well as "documents submitted by the parties which are matters of public record or which are deemed included in the Complaint."), *aff'd,* 443 Fed.Appx. 582 (2d Cir. 2011).

2    Ditech notes that Green Tree changed its name to Ditech effective August 31, 2015, *see* Ditech Memorandum of Law in Support at n.1, DE [30], a change acknowledged by Plaintiff in the complaint. *See* Compl. ¶ 18 ("Green Tree (which is now Ditech) ...").

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 32 of 74

Felberbaum v. Sequium Asset Solutions, Not Reported in Fed. Supp. (2023)

2023 WL 167559
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Lazar FELBERBAUM, Plaintiff,
v.
SEQUIUM ASSET SOLUTIONS and
LVNV Funding LLC, Defendants.

21-cv-9513 (NSR)
|
Signed January 11, 2023

**Attorneys and Law Firms**

Eliyahu R. Babad, Stein Saks, PLLC, Hackensack, NJ, for Plaintiff.

Brendan Hoffman Little, Lippes Mathias LLP, Buffalo, NY, for Defendants.

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

**\*1** Plaintiff Lazar Felberbaum ("Plaintiff") commenced the instant action against Defendants Sequium Asset Solutions, LLC ("Defendant Sequium") and LVNV Funding LLC ("Defendant LVNV") (collectively, "Defendants") alleging claims arising under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). (Complaint ("Compl.") (ECF No. 1).) Before the Court is Defendants' motion pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's Complaint is dismissed.

**BACKGROUND**

The following facts are derived from the Complaint and are accepted as true for the purposes of this motion except as otherwise noted.

Plaintiff is a New York resident who "allegedly" incurred a debt to non-party Citibank, N.A. ("Citibank"), which arose primarily out of personal credit transactions. (Compl. at ¶¶ 7, 16.) The debt became "deliquen[t]" on January 15, 2009. (Id.

at Ex. A.) Defendant LVNV later purchased this delinquent debt and contracted with Defendant Sequium to collect the debt originally owed to Citibank and now owed to Defendant LVNV. (Id. at ¶¶ 19, 23.)

On or around December 4, 2020, Defendants sent Plaintiff a collection letter (the "Letter") regarding the alleged debt, which read as follows:

> This notice is being sent to you by a collection agency. Please be advised that LVNV Funding LLC, the Current Creditor-Debt Purchaser, has purchased the account referenced above. Our records further indicate that the judgment that was awarded on 12/13/2013 remains unresolved. This is the date on which the balance became due.

(Id. at ¶ 24, Ex. A.)

The judgment referenced in the Letter totaled $27,212.94. (Id. at ¶ 25, Ex. A.) The Letter stated a "Total Due" in the amount of $27,212.94 (id. at ¶ 26.), but the Letter did not state whether interest was accruing on this amount (id. at ¶¶ 27–29.). In the Letter, Defendants offered to settle the existing debt for 65% of the "Total Due." (Id. at ¶ 45.) Defendants, however, did not (1) include a deadline by which Plaintiff had to accept the offer or (2) otherwise state that the offer would expire at a later unspecified date. (Id. at ¶¶ 46–47.)

Plaintiff alleges the "amount stated as due is ... false, deceptive, misleading, and unfair." (Id. at ¶ 39.) In particular, Plaintiff asserts that Defendants did not disclose that interest was accruing on the balance at the New York post-judgment rate of "nine per centum per annum." (Id. at ¶ 31.) As a result, the actual amount due was $49,051.33.[1] (Id. at ¶ 33.) Plaintiff further avers that Defendants would "not have allowed Plaintiff to accept the settlement offer at any time" and would "refuse to honor the offer" should Plaintiff accept. (Id. at ¶¶ 49, 57.) The offer, alleges Plaintiff, was "illusory" and "merely a collection tactic" "to coerce" Plaintiff into paying the debt or to "sow ... confusion." (Id. at ¶ 62–63.)

**\*2** Defendants answered the Complaint (ECF Nos. 9 & 11) and now move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (ECF No. 19.)

Defendants also move to strike Plaintiff's sur-reply (ECF No. 24), which Plaintiff styled as a "Notice of Supplemental Authority" and filed in opposition to Defendants' Rule 12(c) motion (ECF No. 23-1). Although Plaintiff did not seek leave

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 33 of 74

Felberbaum v. Sequium Asset Solutions, Not Reported in Fed. Supp. (2023)

to file a sur-reply, *see* Rule 3(B) of this Court's Individual Practices in Civil Cases, this Court nonetheless DENIES Defendant's Motion to Strike Plaintiff's Sur-Reply and deems Plaintiff's sur-reply papers accepted for the purposes of adjudicating the present Rule 12(c) motion.

### LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). [2] "To survive a Rule 12(c) motion, the complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.' " *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard for analyzing a motion for judgment on the pleadings under Rule 12(c) is identical to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *see also* Fed. R. Civ. P. 12(b)(6).

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.' " *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is " 'not bound to accept as true a legal conclusion couched as a factual allegation,' " or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Likewise, "where a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146–47 (2d Cir. 2011). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### DISCUSSION

**\*3** The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. To achieve this, the FDCPA imposes, "among other things, certain notice and timing requirements on efforts by 'debt collectors' to recover outstanding obligations." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 58 (2d Cir. 2004). Section 1692k of the FDCPA provides that "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person...." 15 U.S.C. § 1692k.

Moreover, a single violation is sufficient to establish liability under the FDCPA. *Wiener v. Bloomfield*, 901 F. Supp. 771, 778 (S.D.N.Y. 1995) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "The court considers the frequency or number of violations only in calculating damages." *Id.* (citing 15 U.S.C. § 1692k(b)(1)). "The court may not, however, regardless of the number of violations, impose more than the $1,000 statutory penalty provided for actions such as these in the absence of actual damages." *Id.* (citing 15 U.S.C. § 1692k(a)(2)(A)).

To state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. [3] *See Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 WL 1134723, at *3 (E.D.N.Y. Mar. 24, 2017). Plaintiff alleges that Defendants violated Sections 1692e, 1692e(2), e(10), 1692f, and 1692g of the FDCPA. *See* Compl. ¶¶ 79–93. For the reasons articulated below, the Court dismisses all of Plaintiff's claims.

Section 1692e of the FDCPA prohibits a debt collector from making a "false, deceptive, or misleading representation." 15 U.S.C. § 1692e. In particular, Section 1692e(2) prohibits "the false representation of the character, amount, or legal status

of any debt," and Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." "It is well established that the FDCPA imposes strict liability on debt collectors," meaning that Plaintiff "need not prove that the prohibited conduct was intentional." *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 528 (S.D.N.Y. 2013); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996) ("Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.").

In the Second Circuit, two principles of statutory construction guide courts' assessments of alleged violations of Section 1692e: (1) the FDCPA is liberally construed to effectuate its purpose of consumer protection, and (2) collection notices are analyzed from the perspective of the "least sophisticated consumer." *Taylor v. Fin. Recovery Servs.*, 886 F.3d 212, 214 (2d Cir. 2018) (internal citation omitted). The least sophisticated consumer test is an objective one that "pays no attention to the circumstances of the particular debtor in question." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012). Despite the name, the least sophisticated consumer is not wholly unsophisticated; they are "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Kolbasyuk v. Capital Mgmt. Servs. LP*, 918 F.3d 236, 239 (2d Cir. 2019) (internal quotations and citation omitted). Applying the standard of the least sophisticated consumer, a debt collector's representation is misleading or deceptive "if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.' " *Avila v. Riexinger & Assocs.*, LLC, 817 F.3d 72, 75 (2d Cir. 2016) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)). There is also a materiality requirement, where courts focus on "whether the false statement would frustrate a consumer's ability to intelligently choose his or her response." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 86 (2d Cir. 2018) ("[M]ere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e.") (internal quotations and citations omitted).

**\*4** Before this Court is a narrow question: whether a debt collector violates the FDCPA when it fails to state that the interest clock is (or is not) running when offering to settle a debt for a sum certain. The Second Circuit recently addressed an identical question, holding that "debtors faced with a settlement offer are not misled by the failure to disclose that interest is accruing because ... payment of the amount indicated in a collection notice would extinguish the debt." *Cortez v. Forster & Garbus, LLP*, 999 F.3d 151, 155 (2d Cir. 2021). In so doing, the Second Circuit concluded "a settlement offer need not enumerate the consequences of failing to meet its deadline or rejecting it outright so long as it clearly and accurately informs a debtor that payment of a specified sum by a specified date will satisfy the debt." *Id.* at 156. At first glance, the Second Circuit's reasoning in *Cortez* appears to control the result in the instant case; here, as in *Cortez*, Defendants offered to settle the debt for a percentage of the amount shown as due and owing. If Plaintiff availed himself of Defendants' settlement offer, his "payment ... would extinguish the debt." *Id.* at 155.

In his sur-reply, Plaintiff argues *Cortez* is inapplicable because the offer letter at issue in *Cortez* included a *specific* date by which the debtor needed to avail himself of the offer. (ECF No. 23-1 at 1–2.) In effect, including a specific date in the offer notified the debtor as to how long the offer would remain open. By not including a specific date in the Letter, Plaintiff contends the Defendants were employing a "coercive collection tactic" in which Defendants would "not honor" Plaintiff's acceptance of their offer. (*Id.* at 2.) Plaintiff alleges as much in the Complaint, asserting that Defendants would not have honored Plaintiff's acceptance of their settlement offer in 1, 5, 10, 20, or 50 years. (Compl. at ¶¶ 49–54.) In other words, Plaintiff is concerned he will pay the settlement amount and then later find out Defendants (or their successors) have pocketed the payment without discharging Plaintiff's debt. (*See id.* at ¶¶ 57–63.) Plaintiff concludes Defendants' offer is "illusory" (id. at ¶ 62), and thus the Letter "violates the FDCPA." (ECF No. 23-1 at 2; *see generally* Compl.)

Plaintiff is incorrect. The Second Circuit in *Cortez* did not establish a bright line rule that every settlement offer must include a specific deadline for acceptance. The *Cortez* Court was not concerned with whether the offer included a specific acceptance date; instead, it was concerned with whether the settlement offer would mislead a debtor because "the offer set forth a payment deadline *but failed to disclose whether interest or fees would accrue if payment were tendered after the deadline.*" *Cortez*, 999 F.3d at 156 (emphasis added). Ultimately, the Court reasoned that a settlement offer "need not enumerate" post-deadline interest and fees so long as the offer "clearly and accurately informs a debtor that payment

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 35 of 74

Felberbaum v. Sequium Asset Solutions, Not Reported in Fed. Supp. (2023)

of a specified sum by a specified date will satisfy the debt." *Id.* Put differently, so long as the offer has not lapsed and a debtor is entitled to pay a specified sum to satisfy a debt, a debt collector is not bound to "anticipate every potential collateral consequence that could arise in connection with the payment or nonpayment of a debt." *See id.*; *Avila v. Riexinger & Assocs.*, LLC, 817 F.3d 72, 77 (2d Cir. 2016) ("We hold that a debt collector will not be subject to liability under Section 1692e for failing to disclose that the consumer's balance may increase due to interest and fees if the collection notice ... clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date."); *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) ("The Letter at issue here plainly states that the percentage saved is 'on your outstanding account balance.' The fact that a debtor may then have to pay tax on the amount saved is simply not deceptive in the context of what the savings are on a debtor's outstanding account balance.") (internal quotations omitted); *see also Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 215 (2d Cir. 2018) ("Construing the FDCPA in light of its consumer protection purpose, we hold that a collection notice that fails to disclose that interest and fees are not currently accruing on a debt is not misleading within the meaning of Section 1692e.").

**\*5** Here, Defendants' offer remains open, and as a result, Defendants have no present duty to inform Plaintiff of the amount of interest due on the account.[4] Plaintiff does not allege the settlement offer is closed at present. Instead, Plaintiff speculates that Defendants, who "retain[ ] the right to rescind the settlement offer at any time," "would not have allowed Plaintiff to accept the settlement offer." (Compl. at ¶¶ 48–61.) Plaintiff's allegations, however, are speculative and incorrect as a matter of law. Should Plaintiff accept Defendants' offer by paying the specified sum, Defendants cannot then revoke their offer.[5] *See Altman v. Zwicker & Assocs., P.C.*, No. 20 CV 6622 (VB), 2021 WL 3774120, at \*4 (S.D.N.Y. Aug. 25, 2021) ("In other words, defendant could not have withdrawn the offer of sending an application if the consumer paid the allegedly outstanding debt without communicating such withdrawal to the consumer."). Until such time as Plaintiff accepts Defendants' offer by paying the specified sum, Defendants may revoke the offer, but only if they first give unambiguous notice of revocation to Plaintiff. *See, e.g., Cumis Ins. Soc., Inc. v. Citibank*, N.A., 921 F. Supp. 1100, 1106 (S.D.N.Y. 1996) ("A revocation is a clear manifestation of an intent not to perform, and once communicated to the offeree, terminates the offeree's

power to accept the offer.") (citing Restatement (Second) of Contracts § 42 (1981)). Because Defendants cannot revoke the offer without first giving Plaintiff notice of their intent to do so, the Letter is not misleading. In fact, the Letter "clearly states that the holder of the debt will accept payment of the amount set forth in full satisfaction of the debt if payment is made by a specified date,"—here any date prior to Defendants giving notice of their intent to revoke the offer. *See Avila*, 817 F.3d at 77; *see also Weiss v. Sequium Asset Sols., LLC*, No. 21-CV-218(EK)(TAM), 2022 WL 1046260, at \*3 (E.D.N.Y. Apr. 7, 2022) ("Indeed, the open-ended offer from the Defendants was more generous to [Plaintiff] than the defined expiration in *Cortez*, in that it gave [Plaintiff] longer than Mr. Cortez was afforded to accept the settlement offer."). In sum, Defendants' offer remains open, and Plaintiff is still entitled to pay $27,212.94—a sum certain—to extinguish all debts associated with his account.

Plaintiff's claim under Section 1692e fails. So too do Plaintiff's claims under Sections 1692f and 1692g. Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt any debt." "Unconscionable" here means "shockingly unjust or unfair" or "affronting the sense of justice, decency, or reasonableness." *Gallego v. Northland Group, Inc.*, 814 F.3d 123, 127–28 (2d Cir. 2016). Meanwhile, Section 1692g requires Defendants to state "the amount of the debt." For the reasons stated above, Plaintiff's allegations fail to show Defendants' collection notice containing an open offer—which has remained open for over two years and settles Plaintiff's debt interest-free at a sum certain—is "[s]hockingly unjust or unfair," or "affronting the sense of justice, decency, or reasonableness." *Id.* Accordingly, Defendants' Letter does not violate Section 1692f.

Insofar as Defendants' offer remains open and represents the sum certain owed by Plaintiff to extinguish the debt, Defendants also abide by the requirements of Section 1692g. *See Weiss*, 2022 WL 1046260, at \*4 (E.D.N.Y. Apr. 7, 2022) (finding Defendants "comport[ed]" with requirements of Section 1692g where Defendants extended an open offer for Plaintiff to pay a specified amount to extinguish Plaintiff's debt).

**CONCLUSION**

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 36 of 74

**\*6** For the foregoing reasons, Defendants' motion for judgment on the pleadings is GRANTED. Defendants' motion to strike Plaintiff's sur-reply is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 167559

---

## Footnotes

1      This estimated balance represents the accrued interest as of November 17, 2021, when Plaintiff filed the Complaint. (Compl. at ¶ 33.)

2      Defendant Sequium attaches two exhibits to its answer. (*See* ECF Nos. 9-1 (Declaration of Shaun Ertischek) & 9-2 (Declaration of Patricia Sexton).) Because Plaintiff had no notice of the exhibits prior to their filing, this Court declines to consider them in adjudicating the present 12(c) motion. *See L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 422 (2d Cir. 2011) (citing *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders *they had notice* and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on [a 12(b)(6)] motion.") (emphasis added)).

3      Plaintiff adequately alleges the first two requirements. (*See* Compl. at ¶¶ 8–13, 23.)

4      Defendants' duty to report interest attaches when (1) Defendants revoke the open offer to accept payment of a sum certain to extinguish the debt, and (2) Defendants indeed charge interest on the principal balance. *See Avila,* 817 F.3d at 76 ("Because the statement of an amount due, without notice that the amount is already increasing due to accruing interest or other charges, can mislead the least sophisticated consumer into believing that payment of the amount stated will clear her account, we hold that the FDCPA requires debt collectors, when they notify consumers of their account balance, to disclose that the balance may increase due to interest and fees."). In any event, it appears Defendants are estopped from charging interest on the balance-to-date. (*See* ECF No. 9-1 (Declaration of Shaun Ertischek) & 9-2 (Declaration of Patricia Sexton).)

5      Plaintiff alleges Defendant Sequium acts "on behalf of Defendant LVNV." (*See* Compl. at ¶ 23.) As such, Defendant LVNV is bound to honor the contract proposed to Plaintiff by Defendant Sequium on Defendant LVNV's behalf. *See, e.g., Minskoff v. Am. Exp. Travel Related Servs. Co.,* 98 F.3d 703, 708 (2d Cir. 1996) ("Under general principles of agency, the authority of an agent is the power of the agent to do an act or to conduct a transaction on account of the principal which, with respect to the principal, he is privileged to do because of the principal's manifestations to him.") (internal quotations omitted).

---

**End of Document**                                         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

⚑  KeyCite Blue-Striped Flag

Appeal Filed by   Flores v. KW Call Center Services LLC,   2nd Cir.,   June 18, 2026

2026 WL 1481648
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Valerie FLORES, Plaintiff,

v.

KW CALL CENTER SERVICES
and Michelle Diaz, Defendants.

1:26-cv-122 (BKS/MJK)
|
Signed May 27, 2026

**Attorneys and Law Firms**

Plaintiff pro se: Valerie Flores, Albany, NY 12201

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, Chief United States District Judge

**I. INTRODUCTION**

 *1  Plaintiff pro se Valerie Flores brought this action alleging violations of: Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et. seq. ("ADEA"); 18 U.S.C. § 2261(a); and 18 U.S.C. § 1514. (Dkt. No. 1). Plaintiff also filed a motion to proceed *in forma pauperis* ("IFP"). (Dkt. No. 2). This matter was referred to United States Magistrate Judge Mitchell J. Katz for an initial review pursuant to 28 U.S.C. § 1915(e)(2) and Local Rule 72.3(d). On February 5, 2026, Magistrate Judge Katz granted Plaintiff's application to proceed IFP, and issued a Report-Recommendation recommending that Plaintiff's complaint be dismissed without prejudice and with leave to amend. (Dkt. No. 5). On April 1, 2026, Plaintiff filed timely objections to the Report-Recommendation. (Dkt. No. 9). For the reasons that follow, the Report-Recommendation is adopted in its entirety.

**II. STANDARD OF REVIEW**

The Court reviews de novo those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Nambiar v. Cent. Orthopedic Grp., LLP,* 158 F.4th 349, 359 (2d Cir. 2025); 28 U.S.C. § 636(b)(1)(C). "A proper objection is one that identifies the specific portions of the [Report-Recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd.*, 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013) (citation omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id*.

**III. DISCUSSION**

  **A. Objection**
Plaintiff objects "to the court dismissing the case with prejudice." (Dkt. No. 9, at 1). Plaintiff's objection is unfounded insofar as it challenges the Report-Recommendation, which recommends dismissal *without* prejudice and with leave to amend. [1] (Dkt. No. 5, at 8). As this is Plaintiff's only objection, the Court reviews the remainder of the Report-Recommendation for clear error.

In the Report-Recommendation, Magistrate Judge Katz recommended dismissal as to Defendant KW Call Center Services because the complaint failed to "plead any action or inaction that can be attributed to KW Call Center Services." (Dkt. No. 5, at 5). KW Call Center Services is not mentioned in the body of the complaint or in connection with any allegation. Thus, the Court finds no error in the dismissal recommendation. Magistrate Judge Katz also recommended dismissal of the claims against Defendant Michelle Diaz on the grounds that, without more, the allegations that Diaz failed to hire Plaintiff and may have stalked Plaintiff do not state claims for relief, and even if they did, venue is improper because such claims allegedly arose in Nevada and Illinois. (*Id.* at 5–6). The Court finds no error in the recommended dismissal of the claims against Diaz. However, the complaint cites several employment discrimination and other federal statutes that the Report-Recommendation did not discuss. (*See* Dkt. No. 1, at 3 (citing Title VII, ADA, ADEA, 18 U.S.C. § 2261(a), and 18 U.S.C. § 1514)). For the reasons that follow, the Court finds the complaint fails to state a claim for relief under any federal statute.

## B. Federal Statutes

**\*2** Construed liberally, the complaint may be read to assert: (1) that Defendants' failure to hire her constituted unlawful discrimination or retaliation, in violation of Title VII, the ADA, and the ADEA; and (2) that Defendants violated [18 U.S.C. § 2261(a)](interstate domestic violence) and [18 U.S.C. § 1514](authorizing government or court, on its own motion, to seek temporary restraining order in criminal case). (Dkt. No. 1, at 3).

### 1. Individual Defendant Michelle Diaz

Plaintiffs' Title VII, ADA, and ADEA claims against Diaz in her individual capacity, must be dismissed with prejudice because individuals are not subject to liability under these statutes. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (noting that "the remedial provisions of Title VII ... do not provide for individual liability"); *Garibaldi v. Anixter, Inc.*, 407 F. Supp. 2d 449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under any of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA.").

### 2. Discrimination

#### a. Title VII

Under Title VII, it is illegal "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." [42 U.S.C. § 2000e-2(a)]. To state a claim for relief under Title VII, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) h[er] race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

In this case, the complaint fails to allege that Plaintiff falls within any category protected by Title VII, such as her gender, race, or religion, or any facts that would allow a plausible inference that Defendant KW Call Center Services discriminated against her on that basis. Indeed, as Magistrate Judge Katz noted, Plaintiff alleges no facts regarding Defendant KW Call Center Services. Thus, Plaintiff's Title VII discrimination claims against Defendant KW Call Center Services are dismissed without prejudice.

#### b. ADA

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." [42 U.S.C. § 12112(a)]. A prima facie case of disability discrimination under the ADA requires a plaintiff to show: "(1) the defendant is covered by the ADA; (2) [the] plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) [the] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) [the] plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 486 (S.D.N.Y. 2017) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005)).

Here, the complaint fails to allege any facts suggesting that Plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA. Accordingly, the complaint fails to state a plausible claim for relief against KW Call Center Services under the ADA for employment discrimination.

#### c. ADEA

**\*3** The ADEA makes it "unlawful for an employer ... to discharge any individual ... because of such individual's age." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 (2d Cir. 2021) (quoting [29 U.S.C. § 623(a)]). "Under the ADEA ... a prima facie case of age discrimination consists of four elements: (1) the plaintiff's membership in a protected class; (2) the plaintiff's qualification for a particular position of employment; (3) an adverse employment action by the defendant employer; and (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

The complaint contains no facts regarding Plaintiff's age or qualifications or suggesting that KW Call Center Services acted with discriminatory intent. Accordingly, Plaintiff's ADEA claims against Defendant KW Call Services are dismissed without prejudice.

### 3. Retaliation

"Claims for retaliation [under the ADA] are analyzed under the same burden-shifting framework established for Title VII cases." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002); *see Salas v. N.Y. City Dep't of Investigation*, 298 F. Supp. 3d 676, 685 (S.D.N.Y. 2018) (explaining that the ADA and Title VII contain "nearly identical language, and retaliation claims under the two statutes are analyzed under the same framework") (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–23 (2d Cir. 2001)). Retaliation under the ADEA is likewise analyzed under the framework applicable to Title VII claims. *See Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006) (applying Title VII retaliation standards and burdens to ADEA). Thus, to state a claim or retaliation, "the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action— against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted).

The complaint alleges that after Plaintiff filed "an EEOC complaint," Diaz "may have stalked" Plaintiff. (Dkt. No. 1, at 5). However, as discussed, there is no individual liability under Title VII, the ADA, or the ADEA, and Plaintiff fails to assert any facts as to KW Call Center Services' alleged conduct. Accordingly, Plaintiff's Title VII, ADA, and ADEA retaliation claims are dismissed.

### 4. Other Statutes

Plaintiff also appears to assert claims under 18 U.S.C. § 2261(a), which is a criminal statute, and 18 U.S.C. § 1514, which allows the government to obtain a restraining order. However, neither of these statutes confer a private right of action on Plaintiff. *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86–87 (2d Cir. 1972) ("It is a truism, and has been for many decades, that in our federal system crimes are always prosecuted by the Federal Government,

not ... by private complaints."); *McClure v. Menard Corr. Ctr.*, No. 11-cv-984, 2012 WL 3062235, at *4 (S.D. Ill. July 26, 2012) ("18 U.S.C. § 1514 provides a mechanism for protecting a victim or witness in a Federal criminal case, not a civil rights action."). Accordingly, any claims under 18 U.S.C. § 2261(a) and 18 U.S.C. § 1514, are dismissed with prejudice.

### C. Leave to Amend

"Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir 2000) (internal quotation marks and citations omitted). A pro se plaintiff should have at least one chance to amend if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, a court may deny even a pro se plaintiff leave to amend when amendment would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**\*4** Here, while unlikely, the Court cannot say that, with better pleading, an amended complaint would be futile as to any claim dismissed *without prejudice*. Any such amended complaint will replace the existing complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (internal quotation marks and citations omitted). Any exhibits that Plaintiff wishes the Court to consider going forward must be attached to the amended complaint. This means that the previous complaint and other filings will no longer be the operative documents—everything that is essential must be contained in or attached to the amended complaint.

### IV. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Magistrate Judge Katz's Report-Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety, as set forth above; and it is further

**ORDERED** that Plaintiff's Title VII, ADA, and ADEA claims against Defendant Michelle Diaz, and Plaintiff's claims under 18 U.S.C. § 2261(a) and 18 U.S.C. § 1514 are **DISMISSED WITH PREJUDICE** and **WITHOUT**

**LEAVE TO AMEND** because they fail to state a claim as a matter of law; and it is further

**ORDERED** that the remainder of the complaint is **DISMISSED WITHOUT PREJUDICE** and **WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order. Any amended complaint must be a complete pleading which will replace the current complaint in total; and it is further

**ORDERED** that if Plaintiff timely files an amended complaint, it shall be referred to Magistrate Judge Katz for review; and it is further

**ORDERED** that, if Plaintiff fails to file an amended complaint within 30 days from the date of this Order or to request an extension of time to do so, the Clerk is directed to enter judgment without further order of the Court; and it is further;

**ORDERED** that the Clerk serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2026 WL 1481648

---

**Footnotes**

1    However, for the reasons discussed elsewhere in this Order, the Court finds dismissal with prejudice is required as a matter of law as to several of Plaintiff's claims.

---

    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 268498
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Abdul-Raheem Alonzo HUMPHREY, Plaintiff,
v.
PENNSYLVANIA COURT OF COMMON
PLEAS OF PHILADELPHIA, et al., Defendants.

CIVIL ACTION NO. 20-CV-2335
|
Filed 01/27/2021

**Attorneys and Law Firms**

Abdul-Raheem Alonzo Humphrey, Camden, SC, pro se.

**MEMORANDUM**

RUFE, J.

 **\*1**  On May 15, 2020, *pro se* Plaintiff Abdul-Raheem Alonzo Humphrey filed a Complaint in this Court pursuant to 42 U.S.C. § 1983. Named as Defendants were the Pennsylvania Court of Common Pleas of Philadelphia, the Honorable Christopher Mallios, Astor Weiss Kaplan & Mandel LLP, David Gutin Esquire, Jordan Group, Nefertitti C. Jordan Esquire, and Ijnanya Young. In a Memorandum and Order filed on May 26, 2020, the Court granted Humphrey's request to proceed *in forma pauperis* and dismissed the Complaint without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Humphrey was granted leave to file an amended complaint within thirty days if he was able to state a plausible claim over which this Court could exercise subject matter jurisdiction or, in the alternative, to refile his claims in an appropriate state court. (*See* ECF Nos. 6, 7.) When Humphrey failed to file an amended complaint within the stated time, the case was dismissed on July 17, 2020, with the Court repeating the provision that Humphrey could bring his claims in an appropriate state court. (ECF No. 8.)

On January 14, 2021, Humphrey filed a pleading labeled as a "Complaint" that the Clerk of Court docketed as an Amended Complaint in this action. (ECF No. 9.) Although the Complaint was filed months after deadline to amend, and after the case had been closed, the Court will reopen the case in the interests of justice and consider the merits of the Amended Complaint. However, because the Amended Complaint is an exact copy of the original Complaint to which Humphrey has merely attached exhibits, and accordingly suffers from the same defects the Court has already identified, it too must be dismissed.

**I. FACTUAL ALLEGATIONS**

As recited in the Court's prior Memorandum, Humphrey is the father of a four-year old child identified as "NH." (ECF No. 9 at 3.) [1] He asserts that NH's mother, Defendant Ijnanya Young, physically abuses the child. (*Id.*) Humphrey retained Defendants David Gutin and Nefertitti C. Jordan of the law firms Astor Weiss Kaplan & Mandel LLP and Jordan Group respectively on December 3, 2019 to seek a protection from abuse order in the Court of Common Pleas. (*Id.*) He provided a medical report to the attorneys to use as proof of the abuse. (*Id.*)

Rather than submit the report, Gutin asked the Court for a continuance. (*Id.*) Humphrey asserts that Young called him 36 times on December 10, 2019 to threaten his family. (*Id.*) He reported this conduct to Gutin and to the authorities where he lives in South Carolina. (*Id.*) On December 27, 2019, Humphrey fired his attorneys. (*Id.*) On January 28, 2020, the attorneys moved to withdraw their appearances before the Common Pleas Court and Humphrey asked for a continuance of the matter to find new counsel, but the request was denied. (*Id.*) On February 12, 2020, Humphrey was "found to be in Contempt [of a] fugitive warrant." (*Id.*) He again requested a continuance of the Common Pleas proceeding, but this request was also denied, and Young was granted temporary custody of NH on March 6, 2020 by Judge Mallios. (*Id.*) On March 26, 2020, Judge Mallios denied the request for a protection from abuse order. (*Id.*)

 **\*2**  In his new pleading, Humphrey again asserts claims against all Defendants pursuant to 42 U.S.C. § 1983. (*Id.*) He again asks this Court to grant him sole custody of NH until the child reaches his eighteenth birthday. (*Id.* at 4.) He also seeks money damages to pay for NH's support and therapy until his twenty-first birthday. (*Id.*)

The only difference between Humphrey's original Complaint and his recent submission is that he has appended to the new document approximately 53 pages of exhibits constituting medical records for NH, pictures apparently showing evidence of abuse, and copies of documents filed in a state court protection from abuse proceeding. (*Id.* at 6-58.) [2]

Case 1:25-cv-01838-AMN-ML   Document 15   Filed 07/08/26   Page 42 of 74

Humphrey v. Pennsylvania Court of Common Pleas of Philadelphia, Not Reported in Fed. Supp. (2021)

## II. STANDARD OF REVIEW

Because the Court has granted Humphrey leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Humphrey is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

## III. DISCUSSION

Humphrey again seeks to assert federal constitutional claims under 42 U.S.C. § 1983.[3] That section provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Claims Against the Court of Common Pleas

**\*3** The Court previously dismissed Humphrey's claims against the Philadelphia Court of Common Pleas as barred by the Eleventh Amendment. The Eleventh Amendment bars suits against a state and its agencies in federal court. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Court of Common Pleas, as part of Pennsylvania's unified judicial system, shares in the Commonwealth's Eleventh Amendment immunity. *See Benn v. First Judicial Dist. of Pa.*, 426 F.3d 233, 241 (3d Cir. 2005). As there is no indication Pennsylvania has waived its Eleventh Amendment immunity, Humphrey's claims against the Philadelphia Court of Common Pleas is again dismissed with prejudice as barred by the Eleventh Amendment.

### B. Claims Against Judge Mallios

The Court previously dismissed Humphrey's claims against Judge Mallios because judges are entitled to absolute immunity from civil rights claims that are based on acts or omissions taken in their judicial capacity, so long as they do not act in the complete absence of all jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (per curiam); *Azubuko v. Royal*, 443 F.3d 302, 303-04 (3d Cir. 2006) (per curiam). An act is taken in a judge's judicial capacity if it is "a function normally performed by a judge." *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000). Moreover, "[g]enerally ... 'where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.' " *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (quoting *Barnes v. Winchell*, 105 F.3d 1111, 1122 (6th Cir. 1997)). Humphrey's claims against Judge Mallios are again based upon his actions in his judicial capacity in presiding over the protection from abuse proceedings. Accordingly, Judge Mallios enjoys absolute immunity from suit and Humphrey's claims must be dismissed with prejudice under § 1915(e)(2)(B).

### C. Claims Against Attorneys

The Court previously dismissed Humphrey's claims against his attorneys, Astor Weiss Kaplan & Mandel LLP, David Gutin Esquire, Jordan Group, and Nefertitti C. Jordan Esquire, because private attorneys are not "state actors" subject to liability under § 1983. *See Angelico v. Lehigh Valley Hosp., Inc.*, 184 F.3d 268, 277 (3d Cir. 1999) ("Attorneys performing their traditional functions will not be considered state actors solely on the basis of their position as officers of the court."). As the new submission again attempts to state § 1983 claims against these non-state actors, the claims again must be dismissed.

**D. Claims Against Ijnanya Young**

The Court previously dismissed Humphrey's claims against the mother of his child. She too was found to not be a state actor subject to liability under § 1983. The Court also noted previously that, to the extent that Humphrey's original Complaint could be read as an attempt to relitigate custody of the child, it has been well established for over 150 years that federal courts lack jurisdiction to hear cases concerning divorce, alimony, or child custody cases. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (concluding "that the domestic relations exception, as articulated by this Court since *Barber [v. Barber*, 62 U.S. 582 (1858)], divests the federal courts of power to issue divorce, alimony, and child custody decrees."); *see also Barber*, 62 U.S. at 584 (stating "[w]e disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony"); *Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) (stating that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States."). Humphrey's claims against Young again appear to challenge state court proceedings that have decided child custody and visitation disputes; Plaintiff specifically seeks sole legal and physical custody, which this Court cannot grant. "As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Ankenbrandt*, 504 U.S. at 704. Accordingly, for the reasons previously expressed, this claim must also be dismissed, without prejudice to assertion in the appropriate state court.

**IV. CONCLUSION**

**\*4** For the reasons stated, Humphrey's claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). Because the Court has afforded Humphrey an opportunity to amend and any further attempt at amendment to state claims over which this Court can exercise jurisdiction would appear to be futile, the dismissal of all federal law claims will be with prejudice, *see Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112-113 (3d Cir. 2002). Any claims under state law are dismissed for lack of subject matter jurisdiction without prejudice to their being asserted in an appropriate state court. This case will be marked closed. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 268498

---

**Footnotes**

1    The Court adopts the pagination supplied by the CM/ECF docketing system.

2    Because the exhibits contain information such as the name, birthdate, and medical records of a minor child, as well as other personal identifiers, the Court will order that the exhibits be placed under seal.

3    While Humphrey has not brought any claims under state law, he again mentions a criminal statute, the Violence Against Women Act, 18 U.S.C. § 2261-2262. Any claim under this Act, to the extent that Humphrey again seeks to raise a distinct claim based on a violation of that statute, is dismissed pursuant to § 1915(e)(2)(B). As the Court previously held, numerous federal courts have held that no private right of action exists under this specific statute. *See, e.g., Rock v. BAE Systems, Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) ("Section 2261 also does not explicitly contain a private right of action...."); *Hopson v. Commonwealth Atty. Office*, Civ. A. No. 12-744, 2013 WL 1411234, at \*4 (W.D. Ky. Apr. 8, 2013) ("There is nothing in § 2262(a)(1) that would lead to ... a conclusion [that a private right of action exists under the statute.] Violations of § 2262(a)(1) are criminal offenses. Congress specifically set forth that violations of § 2262(a)(1) are punishable by imprisonment or fines or both.... There is no indication that Congress intended to create a private cause of action under 18 U.S.C. § 2262(a)(1)."); *Smith v. Daniel*, Civ. A. No. 17-111, 2017 WL 1352229 at \*2 (N.D. Fla. Mar. 17, 2017) (holding that the plaintiff lacked standing to bring claims under §§ 2261A and, 2262), *report and recommendation adopted over objections*, 2017 WL 1370734 (N.D. Fla. Apr. 5, 2017); *Ortiz v.*

*Perry*, Civ. A. No. 17-489, 2017 WL 11473894, at *3 (N.D. Okla. Sept. 26, 2017), *report and recommendation adopted*, 2017 WL 11473895 (N.D. Okla. Oct. 23, 2017) ("Although there are federal criminal laws prohibiting interstate stalking and interstate violations of a state-issued protective order, see 18 U.S.C. §§ 2261A, 2262, these laws do not provide civil remedies....").

Moreover, private citizens have no authority to enforce federal criminal statutes. *Diamond v. Charles*, 476 U.S. 54, 64 (1986) (stating that it is well established that private citizens do not have "a judicially cognizable interest in the prosecution or nonprosecution of another.").

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 419699
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Towaki KOMATSU, Plaintiff,

v.

URBAN PATHWAYS, INC.; Daniels Norelli Cecere
& Tavel PC; Neighborhood Association for Inter-
Cultural Affairs, Inc.; The City of New York; Ronald
Abad; Steven Banks; Barbara Beirne; Kristen Benjamin-
Solis; Martha Calhoun; Sharon Coates; Gary Cohen;
Marin Gerber; Allison Gill-Lambert; Anthony M.
Gonzalez; Allison Heilbraun; Joni Kletter; Lisa
Lombardi; Julio Manjarrez; Nigel Marks; Jeffrey
Mosczyc; Andrew Nastachowski; Molly Park; Kishea
Paulemont; Pinny Ringel; Harold Rosenthal; Ariana
Saunders; Ann Marie Scalia; Frederick Shack; Nancy
Southwell; Samuel Spitzberg; Eric Tavel, all sued in
their individual and official capacities. Nancy Bannon;
Anthony Cannataro; Lyle Frank; Shorab Ibrahim;
Gary Jenkins; Lawrence Marks; Maura Noll; Daniel
Tietz, all sued in their official capacities, Defendants.

22-CV-9080 (LTS)
|
Signed January 26, 2023

**Attorneys and Law Firms**

Towaki Komatsu, Bronx, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, appearing *pro se*, brings this 338-page
complaint asserting violations of federal and state law.
Specifically, he seeks relief under 42 U.S.C. § 1983; the Fair
Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692;
the civil provision of the Racketeer Influenced and Corrupt
Organizations Act ("RICO"), 18 U.S.C. § 1964; and New
York State and City law.

By order dated November 22, 2022, the Court granted
Plaintiff's request to proceed without prepayment of fees,
that is, *in forma pauperis*. For the reasons set forth below,

the Court dismisses the claims brought against all of the
defendants except the FDCPA claims, which are brought
against Defendants Daniels Norelli Cecere & Tavel PC
("DNCT"), Harold Rosenthal, Allison Heilbraun, and Eric
Tavel.

### STANDARD OF REVIEW

The Court must dismiss an *in forma pauperis* complaint, or
any portion of the complaint, that is frivolous or malicious,
fails to state a claim on which relief may be granted, or
seeks monetary relief from a defendant who is immune from
such relief. 28 U.S.C. § 1915(e)(2)(B); *see* Livingston v.
Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).
The Court must also dismiss a complaint when the Court lacks
subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the
Court is obliged to construe *pro se* pleadings liberally, *Harris
v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them
to raise the "strongest [claims] that they *suggest*," *Triestman
v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)
(internal quotation marks and citations omitted, emphasis in
original). But the "special solicitude" in *pro se* cases, *id*. at
475 (citation omitted), has its limits – to state a claim, *pro se*
pleadings still must comply with Rule 8 of the Federal Rules
of Civil Procedure, which requires a complaint to make a short
and plain statement showing that the pleader is entitled to
relief.

Moreover, in circumstances where "a court considers whether
to withdraw a *pro se* litigant's special status, it should
consider not only that litigant's lifetime participation in all
forms of civil litigation, but also his experience with the
particular procedural setting presented." *Sledge v. Kooi*, 564
F.3d 105, 109 (2d Cir. 2009). Thus, courts may "limit the
withdrawal of special status to specific contexts in which the
litigant's experience indicates that he may be fairly deemed
knowledgeable and experienced." *Id.*

### BACKGROUND

**A. Plaintiff's Procedural History in This Court**
Plaintiff Towaki Komatsu has brought numerous actions in
this court, including an action recently dismissed by the
undersigned. *See Komatsu v. The City of New York*, ECF
1:22-CV-0424, 42 (S.D.N.Y. Jan. 3, 2023). That action, as

well as other actions Plaintiff filed in this court, concern Plaintiff's alleged unlawful exclusion from participating in public meetings held by the City of New York. *See, e.g., Komatsu v. The City of New York*, ECF 1:20-CV-7046 (ER) (S.D.N.Y.), *lv denied*, 22-1996 (2d Cir. Dec. 22, 2022) (denying leave to appeal, based on leave-to file sanction, "because the appeals do not depart from Petitioner's 'prior pattern of vexatious filings.' "); *Komatsu v. The City of New York*, ECF 1:18-CV-03698 (LGS) (GWG) (S.D.N.Y. Sept. 27, 2021) (ECF 627) (order involuntarily dismissing suit due to Plaintiff's vexatious conduct, including his repetitive voluminous and irrelevant filings), *aff'd*, 21-2479 (2d Cir. Mar. 1, 2022) ("[T]he appeal is DISMISSED because it 'lacks an arguable basis either in law or in fact.' *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)."). In the 20-CV-7046 action, Plaintiff was ordered to show cause why the action "should not be dismissed pursuant to the Court's inherent power to sanction vexatious litigants and/or failure to comply with court orders." *Id.* (ECF 208, at 4.) That matter has been briefed but to date is unresolved.

**\*2** Since December 20, 2020, Plaintiff has been subject to a prefiling injunction requiring him to seek permission to file "any new action in this Court against the City of New York, city officials, and members of the NYPD regarding their alleged involvement in preventing him from attending public meetings with the Mayor." *Komatsu,* ECF 1:20-CV-07046 (ER) (ECF 45).

### B. Plaintiff's Prior Litigation Involving Claims Raised in This New Action

In addition to the litigation Plaintiff has pursued against the City of New York concerning his alleged exclusion from public meetings, Plaintiff also has pursued litigation against individuals employed by the City of New York, the State of New York, and private individuals regarding his lease agreement with Urban Pathways ("Urban"), subsequent state court litigation brought by Urban against Plaintiff, interactions with employees of New York City's Human Resources Administration ("HRA"), and interactions with employees of the New York State Office of Temporary and Disability Assistance ("OTDA"). Before filing this lawsuit, Plaintiff filed a similar action asserting claims against Urban and, as discussed below, naming many of the same defendants named here. *See Komatsu v. City of New York*, ECF 1:20-CV-6510, 2 (S.D.N.Y. Oct. 22, 2020) ("*Komatsu I*"). Accordingly, the Court will first describe the facts alleged in *Komatsu I*, and then turn to the facts alleged in this new action ("*Komatsu II*").

### C. Komatsu I

#### 1. Defendants

On August 14, 2020, Plaintiff filed *Komatsu I*, where he asserted many of the claims that are re-asserted in *Komatsu II* and named many of the same defendants. The first group of defendants includes Urban, described by Plaintiff as "a private entity, business partner of HRA" (ECF 2, at 13), and the following six Urban employees: Frederick Shack, Chief Executive Officer; Lisa Lombardi and Nancy Southwell, Deputy Executive Directors; Ronald Abad, Chief Operating Officer; Kishea Paulemont, Program Director; and Sharon Coates, an employee. Plaintiff also sued DNCT, the law firm representing Urban in its litigation brought against Plaintiff in the Bronx County Housing Court, as well as two of the firm's lawyers, Allison Heilbraun and Eric Tavel.

Plaintiff also sued individuals employed with the City's HRA, including Steven Banks, the former Commissioner; three HRA lawyers, Marin Gerber, Jeffrey Mosczyc, and Ann Marie Scalia; and Kristin Benjamin-Solis, an HRA employee.

The final defendant whom Plaintiff also names in *Komatsu II* is Nancy Bannon, a New York State Supreme Court Justice. [1]

#### 2. Allegations

The following facts are taken from the complaint filed in *Komatsu I.* [2]

In 2016, Plaintiff signed a lease with Urban to rent an apartment in the Bronx. Subsequent to Plaintiff's signing the lease, Urban initiated two Housing Court proceedings in the Bronx County Housing Court ("Housing Court"). DNTC represented Urban in these two proceedings.

**\*3** In January 2017, HRA agreed to pay Plaintiff's storage expenses, incurred at CubeSmart, while Plaintiff resided in his Urban apartment. HRA later contested its agreement to pay for those expenses or to reimburse Plaintiff for the storage expenses he had already paid. Plaintiff litigated that issue in fair hearings before the OTDA, and then in the state courts in proceedings that he initiated under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). On or about January 31, 2018, Defendant Judge Bannon dismissed Plaintiff's initial Article 78 proceeding. Plaintiff brought another proceeding that was pending before Defendant Judge Frank.

In addition to seeking damages, Plaintiff sought various forms of injunctive relief, including orders (1) directing the City of New York and Defendant Mosczyc to provide discovery in Plaintiff's state-court litigation, (2) staying his Housing Court proceedings, or in the alterative, transferring the state court action to this court; (3) directing Judge Bannon to provide an explanation regarding one of her decisions; and (4) directing the City of New York to cease all of its business with Urban.

### 3. Litigation History

On October 22, 2020, the Honorable Louis L. Stanton dismissed the complaint as frivolous, for failure to state a claim on which relief may be granted, for seeking monetary relief from defendants who are immune from such relief, and under the Anti-Injunction Act. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 2283. Plaintiff appealed the decision, and the United States Court of Appeals for the Second Circuit affirmed. *See Komatsu v. CubeSmart*, No. 20-3676-cv (2d Cir. Dec. 20, 2021) (mandate issued Jan. 31, 2022).

### D. *Komatsu II*

#### 1. Defendants

In this new action, Plaintiff brings the same claims, as well as new claims against the following defendants, whom he named in *Komatsu I*: (1) Urban and Urban employees Shack, Lombardi, Abad, Coates, Paulemont, and Southwell; (2) DNCT and DNCT lawyers Heilbraun and Tavel; (3) former Commissioner Banks, HRA employee Benjamin-Solis, and HRA lawyers Gerber, Mosczyc, and Scalia; and (4) Judge Bannon.

Plaintiff also brings new claims against additional defendants, who fall into the following seven categories: (1) additional HRA defendants – Gary Jenkins, HRA's Commissioner; Martha Calhoun, HRA's General Counsel; Allison Gil-Lambert, an HRA lawyer; Barbara Beirne, Deputy Chief Agency Contacting Officer for HRA, who is a lawyer; and Molly Park, an HRA employee; (2) additional Urban defendants - Ariana Saunders, Urban's Chief Compliance Officer, and Andrew Nastachowski and Gary Cohen, Urban employees; (3) the Neighborhood Association for Inter-Cultural Affairs, Inc. ("NAICA") and Julio Manjarrez, a NAICA lawyer, who represented Plaintiff during his Urban litigation in Housing Court; (4) a licensed process server, Anthony Gonzalez, who allegedly did not serve Plaintiff with legal papers; (5) individuals employed with the

OTDA - Daniel Tietz, OTDA Commissioner; Nigel Marks and Samuel Spitzberg, OTDA lawyers; and Maura Noll, OTDA Administrative Law Judge; (6) an employee of the Community Affairs Unit of the Mayor's Office, Pinny Ringel; and (7) another DNCT lawyer, Harold Rosenthal.

Finally, Plaintiff names as defendants the following individuals, but only in their official capacities: (1) Anthony Cannotora, Acting Chief Judge of the State of New York; (2) Judge Lyle Frank, New York State Supreme Court; (3) Judge Shorab Ibrahim, Bronx County Housing Court; (4) Gary Jenkins, Commissioner of the New York City Department of Social Services ("DSS"); (5) Lawrence Marks, Chief Administrative Judge of the UCS; and (6) Joni Kletter, Administrative Law Judge and New York City attorney, and employee of former Mayor Bill de Blasio.

### 2. Allegations

#### a. Urban and DNCT Defendants

 **\*4**  Plaintiff's allegations against the Urban and DNCT Defendants concern his litigation in Housing Court. He alleges that on August 16, 2019, Urban employee Coates "lied by fraudulently claiming that I owed Urban more than $30,000 in rent for my Urban apartment." (ECF 2, at 76.) "Urban used attorneys for DNCT to illegally commence [two lawsuits] as nonpayment proceedings against me. Due to mootness, [these lawsuits] must be dismissed with prejudice." (*Id.*)

Plaintiff alleges that more recently, on March 3, 2022, Plaintiff informed a representative at the Housing Court that Urban failed to provide him with legal papers; he seeks dismissal of a third action brought by Urban for failure to serve him such papers. He also seeks "a subpoena that would order Urban to provide me the video recordings that were recorded on 3/8/22 both in the lobby and stairwells in my building" to show that Defendant Gonzalez, a process server, did not in fact serve Plaintiff legal papers. (*Id.*)

Plaintiff contends that DNCT lawyers "committed continuing violations against me as they committed wire fraud ... and otherwise violated RICO ... the FDCPA," and New York State statutes. (*Id.* at 77.) He also contends that "Urban, DNCT, and their personnel committed multiple acts of wire fraud against me through legal filings that were filed by attorneys for Urban[.]" (*Id.*)

Finally, Plaintiff claims that the HRA and Urban Defendants are so intertwined as to suggest that Urban is "an alter-ego, proxy, and agent of HRA while being a private entity whose acts are attributable to HRA." (*Id.* at 181.)

### b. HRA Defendants

Plaintiff's claims against the HRA Defendants concern HRA's alleged involvement in Plaintiff's litigation against Urban, that is: (1) Urban's alleged objection of justice; (2) interference with Plaintiff's ability to obtain counsel; (3) violation of his rights related to receiving discovery material; and (4) alleged fraud on the court by HRA lawyers. The majority of these claims arose on or before August 14, 2020, including nearly all of the claims against Banks and the claims against Benjamin-Solis. These claims include Plaintiff's CubeSmart litigation, which was the subject of Plaintiff's claims against HRA in *Komatsu I*.

With respect to the *pro bono* counsel allegation, Plaintiff asserts that, before former Commissioner Banks "resigned from HRA near the state of 2022 ... he repeatedly told me that he and HRA would" assist Plaintiff in securing *pro bono* counsel. (*Id.*) These efforts, Plaintiff contends, were unsuccessful in part because the HRA Defendants "engag[ed] in illegal acts against me pertaining to public meetings that have been public forums that include town hall meetings, resource fair meetings, and public hearings by illegally preventing [me] from lawfully attending them in the rooms in which members of the public conducted them with Mr. Banks and other personnel[.]" (*Id.*)

The allegations against the HRA lawyers concern their representation of the City during Plaintiff's litigation against the City. These government lawyers include Beirne, Gil-Lambert, Gerber, Mosczyc, and Scalia. The claims against Park concern Park's informing Plaintiff, on September 13, 2022, that Plaintiff would not receive discovery in his OTDA proceeding. (*See id.* at 118.)

### c. OTDA Defendants

Plaintiff's claims against the OTDA Defendants concern Plaintiff's litigation with the OTDA, over which Judge Bannon presided and in which HRA lawyers represented the City of New York. These incidents occurred in 2017.

(*See id.* at 128.) The Defendants involved in the alleged incidents include: OTDA Commissioner Tietz, sued in his official capacity; OTDA lawyers Marks and Spitzberg; and Administrative Law Judge Noll.

### d. Defendants former Commissioner Banks, Pinny Ringel, and Lori Kletter

**\*5** Plaintiff's claims against former Commissioner Banks also concern New York City public meetings involving public officials. For example, Plaintiff asserts that "I twice testified ... during City Council public hearings on 9/20/18 and 2/4/19 .... Mr. Banks was present on 2/4/19 while I testified about Mr. Vargas and deliberately turned the screen of my laptop to face Mr. Banks as I played a relevant video in conjunction with and support of my testimony." (*Id.* at 187.)

Those claims brought against Ringel and Kletter also arise rise out of interactions with City officials at public meetings, including on such meeting on November 16, 2021, when Ringel and Kletter "illegally prevented me from having a conversation with Mr. Banks during that meeting right after I talked with Mr. de Blasio during it while he stood next to Mr. [Eric] Adams." (*Id.* at 89.)

### e. NAICA Defendants

Plaintiff brings legal malpractice claims against NAICA and NAICA lawyer Manjarrez, who represented Plaintiff during one of the proceedings brought by Urban. (*Id.* at 79) ("Mr. Manjarrez confirmed that he was defying a directive that I had issued to him to obtain the video recordings that were recorded on 3/8/22 by video security cameras that are installed in public areas in my building" to prove that Defendant Gonzalez did not serve Plaintiff with legal papers.).

### f. Process Server Gonzalez

Plaintiff brings claims against a process server who allegedly failed to serve legal papers relating to the Urban litigation. (*Id.* at 76) ("I wasn't served legal papers for Urban3 then by Defendant Anthony Gonzalez who claimed that he serve me legal papers[.]").

**3. Claims**

Plaintiff asserts Section 1983 Claims against: (1) The City of New York; (2) Urban and Urban employees Ronald Abad, Lisa Lombardi, Andrew Nastachowski, Ariana Saunders, Frederick Shack, Nancy Southwell, and Kishea Paulemont; (3) HRA Commissioner Gary Cohen, former HRA Commissioner Steven Banks, HRA lawyers Marin Gerber, Ann Marie Scalia, Jeffrey Mosczyc, and Allison Gill-Lambert, HRA employee Kristen Benjamin-Solis, HRA General Counsel Martha Calhoun, (4) Judges Nancy Bannon, Lyle Frank, Shorab Ibrahim, Joni Kletter, and Maura Noll; (5) OTDA lawyers Nigel Marks and Samuel Spitzberg; (6) HRA employee Molly Park; and (7) Mayor's Office employee Pinny Ringel.

Plaintiff's FDCPA claims are brought against the Urban and DNCT Defendants, that is, (1) Urban and Urban employees Ronald Abad, Sharon Coates, Lisa Lombardi, Kishea Paulemont, Ariana Saunders, Frederick Shack, Nancy Southwell; and (2) DNCT and DNCT lawyers Harold Rosenthal, Eric Tavel, and Allison Heilbraun.

Plaintiff's RICO claims are brought against City officials, NAIC Defendants, Urban Defendants, and DNCT Defendants.

Plaintiff also asserts various state law claims.

## DISCUSSION

### A. Claims Brought Against State Defendants in Their Official Capacity Are Dismissed Under the Eleventh Amendment

Plaintiff brings claims against Judges Nancy Bannon, Anthony Cannatoro, Lyle Frank, Shorab Ibrahim; Chief Administrative Judge Lawrence Marks; Administrative Law Judge Maura Noll; and Commissioner Daniel Tietz, in their official capacities. In *Komatsu I*, Plaintiff also brought several claims against New York State officials, in their official capacity. In dismissing those claims under the Eleventh Amendment, Judge Stanton explained that the claims brought against these State officials were not permitted under the Eleventh Amendment. *See Komatsu I*, 1:20-CV-6510, 10 ("Accordingly, the Court dismisses Plaintiff's claims under federal law against ... Justice Bannon, Judge Spears, and Defendant Vaughan, in their official capacities, under the doctrine of Eleventh Amendment immunity. 28 U.S.C. §

1915(e)(2)(B)(iii)."). Here, Plaintiff again brings official capacity claims against Judges Bannon, Cannataro, Frank, Ibrahim, Chief Administrative Judge Marks, Administrative Law Judge Noll, and Commissioner Tietz, notwithstanding his prior experience with this specific context. *Sledge*, 564 F.3d at 109. Because these claims are barred under the Eleventh Amendment, the Court dismisses all federal claims brought against these Defendants. 28 U.S.C. § 1915(e)(2)(B)(iii).

### B. Plaintiff's Claims Against Government Attorneys Are Dismissed

**\*6** Plaintiff's federal claims brought against Defendants Calhoun, Beirne, Gil-Lambert, Mosczyc, Gerber, Scalia, Marks, and Sptizberg arise from those defendants' legal advocacy representing the HRA and OTDA. In *Komatsu I*, Plaintiff brought similar claims against Mosczyc and Gerber, and Judge Stanton dismissed the claims because these two Defendants, as government lawyers, were absolutely immune from the relief Plaintiff sought from them. Undeterred by the dismissal of those claims in *Komatsu I*, Plaintiff continues to seek relief against government attorneys who are his adversaries in his state court litigation. As explained in *Komatsu I*, however, government attorneys are immune from suit under Section 1983 "when functioning as an advocate of the state [or local government] in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006); *see Barrett v. United States*, 798 F.2d 565, 572–73 (2d Cir.1986) (absolute immunity for government attorney defending state in a civil lawsuit). Accordingly, the Court dismisses Plaintiff's federal claims against the government attorneys because they are immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

### C. Claims Brought Against HRA Employee Park

The Court also dismissed the claims brought against Park, an HRA employee who allegedly informed Plaintiff that he was not entitled to discovery, because this Defendant is also immune from the relief Plaintiff seeks. Like the HRA lawyers, who are absolutely immune as government advocates, Parks is absolutely immune for damages where her conduct as an HRA employee was "intimately associated with the judicial process." *Mangiafico*, 471 F.3d at 396. Accordingly, the Court dismisses all claims against this Defendant. 28 U.S.C. § 1915(e)(2)(B)(iii).

## D. Claims Brought Against Administrative Law Judge Noll

Plaintiff's claims under federal law against Judge Noll are barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims against them in their individual capacities for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (applying judicial immunity to claims under § 1983); *Deem v. DiMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (same as to claims under § 1983 and § 1985), *cert denied*, 140 S. Ct. 2763 (2020). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when a judge acts outside of his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Plaintiff's claims against Judge Noll arise from her actions and decisions in OTDA proceedings, conduct that is well within the scope of judicial duties. Judge Noll is therefore immune from suit as to Plaintiff's claims against her under the doctrine of judicial immunity. The Court dismisses Plaintiff's claims against Judge Noll because Plaintiff seeks monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

## E. Claims Brought Against Former HRA Commissioner Banks and HRA employee Benjamin-Solis

### 1. Claims that arose before August 10, 2020 against Banks and Benjamin-Solis

**\*7** In *Komatsu I*, Plaintiff brought several claims against Banks and Benjamin-Solis that were considered on the merits by Judge Stanton and dismissed for failure to state a claim. *See* § 1915(e)(2)(B)(ii). In *Komatsu II*, Plaintiff brings the same claims against these Defendants, as well as new claims arising from the same conduct, that is, Plaintiff's litigation with HRA. These claims are barred under the doctrine of claim preclusion.[3]

Under the doctrine of claim preclusion, also known as "*res judicata*," a litigant may not bring a new case that includes claims or defenses that were or could have been raised in an earlier case in which the same parties were involved if that case resulted in a judgment on the merits. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Claim preclusion "prevents parties from raising issues that could have been raised and decided in a prior action – even if they were not actually litigated." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594, 206 L. Ed. 2d 893 (2020).

Claim preclusion generally applies if: "(1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *In re Motors Liquidation Co.*, 943 F.3d 125, 130 (2d Cir. 2019) (citation and internal quotation marks omitted).

To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions asserted in the earlier action, *see Pike v. Freeman,* 266 F.3d 78, 91 (2d Cir. 2001), or, in other words, whether facts essential to the second suit were present in the first suit, *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). "A party cannot avoid the preclusive effect *of res judicata* by asserting a new theory or a different remedy." *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) (internal quotation marks and citation omitted).

All of Plaintiff's claims brought against Benjamin-Solis, and some of the claims brought against Banks, accrued before Plaintiff filed *Komatsu I*. Further, all of the claims brought against Benjamin-Solis and some of the claims brought against Banks in *Komatsu II* arise from the same series of transactions as the claims asserted against them in *Komatsu I*. Because Plaintiff did bring those claims, or could have brought those claims in *Komatsu I*, those claims are barred under the doctrine of claim preclusion.

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 51 of 74

Komatsu v. Urban Pathways, Inc., Not Reported in Fed. Supp. (2023)

**2. Claims against Banks that accrued after August 14, 2020**

Plaintiff brings new claims against Banks regarding his interactions with Banks at public meetings. Plaintiff is barred from bringing new claims against City officials regarding incidents occurring at public meetings, unless he receives permission to do so. Because Plaintiff did not seek permission to file new claims against these individuals, as discussed below in Section J, those claims are dismissed without prejudice.

**\*8**  With respect to Bank's alleged interference with Plaintiff's retaining *pro bono* counsel, Plaintiff does not suggest a violation of a constitutional right. The Sixth Amendment, which provides a right to counsel in criminal cases, "does not govern civil cases." *Turner v. Rogers*, 564 U.S. 431, 441 (2011). Thus, to the extent Banks interfered with Plaintiff's retaining counsel, such interference does not implicate Plaintiff's rights under the United States Constitution. Accordingly, the claims against Banks concerning *pro bono* counsel are dismissed for failure to state a claim.

**F. The City of New York and HRA Commissioner Jenkins**

The Court dismisses Plaintiff's claims under federal law against the City of New York and Commissioner Jenkins, who is sued in his official capacity. When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011).

To state a Section 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

Plaintiff alleges no facts showing that the City of New York violated any of his federal constitutional or statutory rights because of one of the City's policies, customs, or practices. The Court therefore dismisses Plaintiff's claims under federal law against the City of New York and Commissioner Jenkins, sued in his official capacity, for failure to state a claim on which relief may be granted.

**G. Section 1983 Claims Brought Against Private Defendants**

Plaintiff brings Section 1983 claims against private individuals and entities, also named in *Komatsu I*, that is: Urban, Abad, Coates, Lombardi, Paulemont, Shack, and Southwell. Judge Stanton dismissed these claims for failure to state a claim because Plaintiff failed to show that any conduct by these private individuals could be considered state action. Now, Plaintiff reasserts similar claims against these same private individuals and also names additional private individuals, not named in *Komatsu I*, that is: Saunders, Nastachowski, and Cohen. Plaintiff still does not show, however, that these defendants' conduct can be considered state action. Thus, for the reasons set forth in Judge Stanton's order, dismissing the Section 1983 claims against the private individuals, the Court dismisses Plaintiff's claims against the individual defendants named in this action for failure to state a claim.

**H. Claims Under Civil RICO**

Plaintiff asserts that Defendants have conspired against him, in violation of the civil provision of RICO. Plaintiff brought similar claims in *Komatsu I*, and Judge Stanton dismissed those claims because Plaintiff failed to show that Defendants engaged in any activity that would support any claim under civil RICO. In this action, Plaintiff also fails to state any facts suggesting a RICO violation. The Court therefore dismisses Plaintiff's claims under civil RICO for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**I. Claims Under the Fair Debt Collection Practices Act ("FDCPA")**

**\*9**  Plaintiff brings claims against the Urban and DNCT Defendants, asserting that they violated the FDCPA. He alleges that they falsely claimed in court that Plaintiff owed rent. He relies on a district court decision, in which a

consumer sued a law firm that was a debt collector. *Lee v. Kucker & Bruh*, LLP, 958 F. Supp. 2d 524, 526 (S.D.N.Y. 2013) ("Defendant K & B is a law firm that primarily represents landlords in New York City. K & B is a debt collector as defined by the FDCPA.").

The FDCPA applies to consumer debt "arising out of ... transaction[s] ... primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5); *Polanco v. NCO Portfolio Mgmt., Inc.*, 930 F. Supp. 2d 547, 551 (S.D.N.Y. 2013) ("[T]he FDCPA is triggered when the obligation is a debt arising out of a consumer transaction"). In cases where the FDCPA applies, it prohibits deceptive and misleading practices by "debt collectors." 15 U.S.C. § 1692e. A debt collector is defined in Section 1692a(6) as: (1) a person whose principal purpose is to collect debts; (2) a person who regularly collects debts owed to another; or (3) a person who collects its own debts, using a name other than its own as if it were a debt collector. *See also Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017) (holding that entities that regularly purchase debts originated by someone else and then seek to collect those debts for their own account are not necessarily debt collectors subject to the FDCPA).

Section 1692d provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Conduct in violation of the statute includes, among other examples and without limitation, using violence or the threat of violence or other criminal means; using obscene or profane language "the natural consequence of which is to abuse the hearer or reader"; publishing a list of consumers who refuse to pay debts; or "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with the intent to annoy, abuse, or harass" the person called. 15 U.S.C. § 1692d.

Plaintiff's claims against the Urban Defendants fails to state claims upon which relief may be granted because Plaintiff does not state facts suggesting that they are debt collectors. His claims against the DNCT Defendants, however, may state claims, if he can show that these defendants engaged in harassing conduct with respect to the alleged debt owed to Urban.

As discussed below, the Court grants Plaintiff leave to file an amended complaint as to his FDCPA claims against DNCT and the DNCT lawyers Harold Rosenthal, Eric Tavel, and Allison Heilbraun. His FDCPA claims brought against Urban

and Urban employees Ronald Abad, Sharon Coates, Lisa Lombardi, Kishea Paulemont, Ariana Saunders, Frederick Shack, and Nancy Southwell are dismissed for failure to state a claim upon which relief may be granted.

### J. Claims Against former Commissioner Banks, Pinny Ringel, and Lori Kletter

Plaintiff's claims against former Commissioner Banks, Ringel and Kletter, that arise out of alleged conduct by New York City officials at public meetings, fall within the scope of Judge Ramos's order requiring Plaintiff to seek permission to file "any new action in this Court against the City of New York, city officials, and members of the NYPD regarding their alleged involvement in preventing him from attending public meetings with the Mayor." *Komatsu*, ECF 1:20-CV-07046 (ER) (ECF 45). These claims are therefore dismissed without prejudice because Plaintiff has not obtained permission to bring these claims against these defendants.

### K. Claims Under State Law

**\*10** A district court may decline to exercise supplemental jurisdiction over claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction ...." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). At this stage, it is premature to determine whether the Court will decline to exercise its supplemental jurisdiction over any claims under state law that Plaintiff is asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

### LEAVE TO AMEND

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The Court, having dismissed all of the claims brought against the DNCT Defendants except the FDCPA claims, finds that it would be futile to grant

him leave to amend the non-FDCPA claims. Accordingly, the Court grants Plaintiff leave to file an amended complaint to assert his FDCPA claims against the DNCT Defendants. The amended complaint must only name the DNCT Defendants and only assert the FDCPA claims, and it may not exceed 20 pages. These limitations are imposed based on Plaintiff's litigation history in this court, where he reasserts the same claims against the same defendants following dismissal of such claims on the merits. The page-limitation is imposed because Plaintiff's pleadings, both in this action and prior actions, do not comply with Rule 8's requirement that his complaint consist of short and plain statements. *See* Fed. R. Civ. P. 8(a).

Should Plaintiff submit an amended complaint that fails to comply with these requirements, the Court will direct the Clerk of Court to return Plaintiff's pleading and will provide him one more opportunity to submit an amended complaint that does not exceed 20 pages, names DNCT Defendants, and asserts FDCPA claims. If he fails to comply with the requirements a second time, the Court will dismiss the action for failure to comply with the Court's order.

## CONCLUSION

The Court dismisses Plaintiff's federal claims brought against Urban Pathways, Inc., Neighborhood Association For Inter-Cultural Affairs, Inc., The City Of New York, Ronald Abad, Steven Banks, Barbara Beirne, Kristen Benjamin-Solis, Martha Calhoun, Sharon Coates, Gary Cohen, Marin Gerber, Allison Gill-Lambert, Anthony M. Gonzalez, Joni Kletter, Lisa Lombardi, Julio Manjarrez, Nigel Marks, Jeffrey Mosczyc, Andrew Nastachowski, Molly Park, Kishea Paulemont, Ariana Saundersm, Ann Marie Scalia, Frederick Shack, Nancy Southwell, Samuel Spitzberg, Nancy Bannon, Anthony Cannataro, Lyle Frank, Shorab Ibrahim, Gary Jenkins, Lawrence Marks, Maura Noll, and Daniel Tietz, as frivolous, for failure to state a claim on which relief may be granted, and for seeking monetary relief from defendants that are immune from such relief. *See* 28 U.S.C. § 1915(e)(B)(i)-(iii).

Those claims brought against Steve Banks, Penny Ringel, and Lorri Kletter that arise out of public meetings are dismissed without prejudice, pursuant to the prefiling injunction issued in *Komatsu*, ECF 1:20-CV-07046 (ER) (ECF 45).

The Court grants Plaintiff leave to file an amended complaint that complies with the standards set forth above.

**\*11**  Plaintiff must submit the amended complaint, which may not exceed 20 pages, to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-9080 (LTS).

An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been assigned)

-against-

AMENDED

_____

COMPLAINT

Do you want a jury trial?
☐ Yes   ☐ No

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only:* the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

Rev. 2/10/17

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   Federal Question

☐   Diversity of Citizenship

### A.  If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____
_____
_____
_____

### B.  If you checked Diversity of Citizenship

#### 1.  Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                        (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

Page 2

If the defendant is an individual:

The defendant, _____ , is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If the defendant is a corporation:

The defendant, _____ , is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____ .

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

_____
First Name            Middle Initial        Last Name

_____
Street Address

_____
County, City                            State             Zip Code

_____
Telephone Number                    Email Address (if available)

Page 3

**Komatsu v. Urban Pathways, Inc., Not Reported in Fed. Supp. (2023)**

**B. Defendant Information**

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:
_____
First Name                    Last Name
_____
Current Job Title (or other identifying information)
_____
Current Work Address (or other address where defendant may be served)
_____
County, City              State            Zip Code

Defendant 2:
_____
First Name                    Last Name
_____
Current Job Title (or other identifying information)
_____
Current Work Address (or other address where defendant may be served)
_____
County, City              State            Zip Code

Defendant 3:
_____
First Name                    Last Name
_____
Current Job Title (or other identifying information)
_____
Current Work Address (or other address where defendant may be served)
_____
County, City              State            Zip Code

Page 4

Defendant 4:
_____
First Name                    Last Name
_____
Current Job Title (or other identifying information)
_____
Current Work Address (or other address where defendant may be served)
_____
County, City              State            Zip Code

**III. STATEMENT OF CLAIM**

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Page 5

_____
_____
_____
_____
_____
_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____
_____
_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____
_____
_____
_____
_____

Page 6

**V. PLAINTIFF'S CERTIFICATION AND WARNINGS**

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____          _____
Dated                                      Plaintiff's Signature

_____
First Name          Middle Initial          Last Name

_____
Street Address

_____
County, City                      State            Zip Code

_____
Telephone Number                  Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes    ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

Page 7

**All Citations**

Not Reported in Fed. Supp., 2023 WL 419699

---

## Footnotes

1    Plaintiff named the following defendants in *Komatsu I* but not in *Komatsu II:* Marilyn Andzeski, Urban management agent; Molly McCracken, an employee with Services for the Underserved, Inc.; Avraham Schmeidler, an HRA employee; Wendell Vaughan, a law clerk; the New York State Office off Court Administration; the New York State Unified Court System; and Judge Brenda Spears, from the Bronx County Housing Court.

2    The allegations from *Komatsu I*, described in this order, relate to the allegations set forth in *Komatsu II*, and do not include each allegation set forth in *Komatsu I*.

3    Although claim preclusion is an affirmative defense to be pleaded in a defendant's answer, *see* Fed. R. Civ. P. 8(c), the Court may, on its own initiative, raise the issue. *See, e.g.*, *Grieve v. Tamerin*, 269 F.3d 149, 154 (2d Cir. 2001) (affirming district court's dismissal on grounds of issue preclusion even though defendant failed to plead that defense, and noting that "principles of preclusion involve" not only "the rights and interests of the parties," but also "important interests of the public and the courts in avoiding repetitive litigation and potentially inconsistent decisions").

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 57 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

2023 WL 3352758
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sheila ROBINSON, Plaintiff,
v.
Mark WILLIAMS, et al., Defendants.

6:22-CV-0982 (GTS/ML)
|
Signed January 12, 2023

**Attorneys and Law Firms**

SHEILA ROBINSON, Plaintiff, Pro Se, 939 Ontario Avenue, Niagara Falls, New York 14301.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above captioned action together with (1) an application to proceed *in forma pauperis*, and (2) an application to appoint counsel, filed by Sheila Robinson ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 5.) For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application, (2) deny Plaintiff's motion for appointment of counsel, and (3) recommend that Plaintiff's Complaint be dismissed in its entirety (a) in part with leave to amend, and (b) in part without leave to amend. (Dkt. Nos. 1, 2, 5.)

**I. BACKGROUND**

Construed as liberally [1] as possible, Plaintiff's Complaint alleges that she formed clothing brands and has since been targeted and harassed by defendants Mark Williams, Kyle Piersall, John De Traglia, Joseph Aiello, Brian Baye, Marissa Vomer, K. Phillips, Benny Grullon, Derek Schultz, Reginald Sanders, Brian French, Hiram Rios, Louis L. Stanton, John Does, Letitia James, Chuck Schumer, Amazon.com, Jeff Bezos, Facebook.com, Mark Zuckerberg, Google.com, Sergin Brin, Larry Page, Sundar Pichai, Zazzle.com, Robert Beaver, Cafepress.com, Bob Marino, Fred Durham, Redbubble.com, Barry Newstead, Martin Hopskin, Utica New York Police Department, and City of Utica in New York State (collectively "Defendants"). (*See generally* Dkt. No. 1.)

More specifically, Plaintiff alleges that she frequented Miller Park in Utica, New York. (Dkt. No. 1 at 5.) Plaintiff alleges that when she would go to Miller Park, Utica police officers would also be present in the park and that the police officers' presence in the park at the same time as Plaintiff put her in "fear of [her] safety and well being" such that she "stopped going to [the] park in fear of being shot by the [U]tica police." (*Id.*)

Plaintiff alleges that, at some point in time, she called the police regarding issues she was having with third-party, Biory Chavez Tinco. (*Id.*) Plaintiff alleges that she sought to pursue charges against Mr. Tinco and to obtain a restraining order that would protect her from Mr. Tinco, but that the Utica police officers refused to arrest Mr. Tinco or assist Plaintiff in obtaining an order of protection. (*Id.* at 5-6.)

Plaintiff alleges that, at some point in time, she went to get her mail and an unnamed maintenance person "came out and provoked [P]laintiff into accidentally macing," [2] the maintenance person then called the police, Plaintiff was arrested, and paid a $300 fine. (*Id.* at 6.)

Plaintiff alleges that a building located next to her residence is a nuisance because it is a gathering place for drug users and dealers. (*Id.* at 6.) Plaintiff alleges that she sought police assistance "multiple times" to address individuals from the property next door who trespassed on to her property. (*Id.*) However, Plaintiff alleges that the Utica police refused to arrest individuals that criminally trespassed and did not conduct warrant checks on the trespassers. (*Id.* at 6-7.)

**\*2** Plaintiff alleges that Defendant Derek Schultz filed a false statement that Plaintiff was suffering from mental illness. (*Id.* at 7.) Plaintiff alleges that Defendant Marissa Vomer filed a false statement stating that Plaintiff was rambling. (*Id.*) Plaintiff alleges that Defendant Reginald Sanders retaliated against Plaintiff by refusing to arrest third-party T. Jones and stating to Plaintiff "you wanted Utica police fired[.] [W]hy should we help you[?]" (*Id.*)

Plaintiff alleges that Defendant Louis Stanton was the assigned judge to another one of her civil cases and that he conspired to violate Plaintiff's right to a jury trial. (*Id.* at 8.) More specifically, Plaintiff alleges that Defendant Stanton dismissed Plaintiff's civil case against "tech-giants" via electronic notice so that Plaintiff would not receive the notice in time to appeal the decision. (*Id.*)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 58 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

Plaintiff alleges that she contacted the New York State Attorney General's office multiple times regarding the harassment she experienced by "one or more of the tech-giants" and the stalking that she experienced at Miller Park by the Utica police officers but that the New York State Attorney General's office informed her that it does not investigate those matters and directed Plaintiff to obtain her own attorney. (*Id.* at 9-10.)

Plaintiff alleges that unnamed "New York State Officials" deprived her of "Erap arrears" by incorrectly and "intentionally posting online that [P]laintiff had not uploaded [the] required documents." (*Id.* at 10-11.)

Plaintiff alleges that she contacted Defendant Chuck Schumer to help her "stop and collect the unauthorized apparel from [A]mazon warehouses" after Plaintiff saw that her clothing line brand was being improperly sold by Defendant Amazon.com. (*Id.* at 11.) Plaintiff alleges that Defendant Schumer failed to assist her because his family members are employed by Defendant Amazon.com. (*Id.*)

Plaintiff alleges that third-party Yahoo.com and Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg, conspired to target, cyberstalk, and stalk Plaintiff to interfere with her civil right to make online profits. (*Id.* at 11.) Plaintiff also alleges that Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg racially targeted her because she is a Black American and they are white or of Asian descent. (*Id.* at 12.)

Based on these factual allegations, Plaintiff appears to assert the following ten claims: (1) a claim against Defendant Utica Police Department for its conduct at Miller Park in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a claim against Defendant Utica Police Department for its refusal to arrest Mr. Tinco and obtain an order of protection in favor of Plaintiff against Mr. Tinco in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (3) a claim against Defendant Utica Police Department for its refusal to arrest individuals who trespassed on Plaintiff's residence in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (4) a claim against Defendant Stanton for violating Plaintiff's due process right to a jury trial pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (5) a claim against Defendant Stanton for sending a dismissal notice electronically in violation of the First Amendment and 42 U.S.C. § 1983; (6) a claim against the New York State Attorney General's Office for failure to investigate and enforce the laws in violation of the Fourteenth Amendment and 42 U.S.C § 1983; (7) a claim against unnamed New York State officials for interfering with Plaintiff's right to equal housing in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (8) a claim against Defendant Schumer for violating Plaintiff's right to equal protection under the law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; (9) a claim against Yahoo.com and Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Jeff Bezos, and Mark Zuckerberg for conspiracy to deprive Plaintiff equal protection under the law pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983; and (10) a claim against "the Tech-Giant gang" for stalking, cyberstalking, and harming Plaintiff. (*See generally* Dkt. No. 1.)

**\*3**  As relief, Plaintiff seeks, *inter alia*, $100,000,000,000 in compensatory damages, punitive damages in the amount of $300,000,000,000, and costs and attorney's fees. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [3] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [4]

## III. LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that—... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [5]

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 59 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

 **\*4** A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Claims Against the Utica Police Department

"Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality

in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at \*3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at \*2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by* 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.).

As a result, I recommend that all claims against Defendant Utica Police Department be dismissed for failure to state a claim upon which relief may be granted.

Moreover, to the extent that the Court is inclined—for the sake of judicial efficiency—to review Plaintiff's claims against Defendant Utica Police Department, as against Defendant City of Utica, I still recommend dismissal of Plaintiff's claims for failure to state a claim upon which relief may be granted.

A municipality may only be named as a defendant in certain circumstances. Pursuant to the standard for establishing municipal liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer."). A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff must also establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights. *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion). Indeed,

Case 1:25-cv-01838-AMN-ML     Document 15     Filed 07/08/26     Page 60 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior*." *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

**\*5** Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor." *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010). As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id.* (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

### 1. Miller Park

I recommend that Plaintiff's claims with respect to Miller Park be dismissed for failure to state a claim upon which relief may be granted. The allegation that police officers are merely present in a public space, such as a park, at the same time as Plaintiff fails to allege that Plaintiff's rights were violated in any way. *See Hickombottom v. City of Chicago,* 739 F. Supp. 1173, 1179 (N.D. Ill. 1990) (police surveillance of plaintiff's apartment did not violate the Fourth Amendment in that plaintiff had no reasonable expectation of privacy as to his comings and goings); *Phillips v. City of San Jose*, C-94-20468, 1994 WL 706213, at \*4 (N.D. Cal. Dec. 13, 1994) (allegations that the police officers followed and observed plaintiff in public areas were not sufficiently egregious to constitute a due process violation under the Fourteenth Amendment).

Moreover, courts in this Circuit have routinely dismissed similar claims as factually frivolous. *See McNaughton v. de Blasio*, 20-CV-6991, 2020 WL 5983100, at \*4-5 (S.D.N.Y. Oct. 8, 2020) (dismissing as frivolous the plaintiff's allegations including, *inter alia*, that the N.Y.P.D. was enlisting parents and their children in an elaborate scheme to lure the plaintiff into committing pedophilic acts); *Gamez v. U.S. Dist. Court Eastern and Southern Dist. of Tyranny, New York*, 11-CV-4068, 2011 WL 3949807, at \*2 (E.D.N.Y. Sept. 6, 2011) (dismissing as factually frivolous, the plaintiff's

claims that the police were stalking, ambushing, and illegally surveilling him). "[A finding of] factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). The term "frivolous" embraces "not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Plaintiff's allegations, even under a liberal reading that the courts give *pro se* pleadings, easily qualify as frivolous under the standard asserted above. *See Denton,* 504 U.S. at 33.

As a result, I recommend that Plaintiff's claims regarding Miller Park be dismissed for failure to state a claim upon which relief may be granted and, in the alternative, for frivolity.

### 2. Failure to Arrest Mr. Tinco

To the extent that Plaintiff's Complaint asserts a claim based on an alleged failure to file charges against Mr. Tinco or help Plaintiff obtain an order of protection against Mr. Tinco, I recommend that it be dismissed. Plaintiff does not have standing to compel any law enforcement agency to prosecute suspected criminal acts because there is no private right of action to enforce state or federal criminal statutes. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also Walker v. CIBC Ltd.*, 20-CV-1337, 2021 WL 3518439, at \*5 (N.D.N.Y. Apr. 13, 2021) (Hummel, M.J.) ("It appears plaintiff is either seeking the criminal prosecution of an individual or individuals or a law enforcement investigation, which is beyond this Court's jurisdiction."), *report-recommendation adopted by* 2021 WL 3204860 (N.D.N.Y. July 29, 2021) (McAvoy, J.); *McFadden v. Ortiz*, 12-CV-1244, 2013 WL 1789593, at \*3 (N.D.N.Y. Apr. 26, 2013) (D'Agostino, J.) (holding that "there is no private right of action to enforce either state or federal criminal statutes.").

**\*6** As a result, I recommend that Plaintiff's claims regarding the failure to arrest Mr. Tinco be dismissed.

### 3. Failure to Arrest Trespassers

Case 1:25-cv-01838-AMN-ML     Document 15     Filed 07/08/26     Page 61 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

For the reasons set forth above in Part IV.A.2. of this Order and Report-Recommendation, I recommend that Plaintiff's claims regarding the failure to arrest alleged trespassers be dismissed for lack of standing.

### B. Claims Against Defendant Stanton

Plaintiff's Complaint appears to assert claims against Defendant Stanton in his individual and official capacity, for actions he allegedly took in his position as Senior United States District Judge of the Southern District of New York. (Dkt. No. 1 at 8-9.)

It is well settled that "officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages." *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (citations omitted) ("A long line of this Court's precedents acknowledges that, generally, a judge is immune from a suit for money damages. Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself."); *Mahapatra v. Comstock*, 97-CV-7129, 1998 WL 88054, at *1 (2d Cir. Feb. 26, 1998) ("[T]he district court properly dismissed the claims for damages based on absolute immunity. Judges are shielded from liability for civil damages for judicial acts performed in their judicial capacities."); *McKnight v. Middleton*, 699 F. Supp. 2d 507, 523 (E.D.N.Y. 2010) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions."). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 357 (1978).

Plaintiff's allegations regarding Defendant Stanton appear to relate to actions he took as judge, while presiding over another civil proceeding initiated by Plaintiff. (*See generally* Dkt. No. 1.) The Complaint is devoid of facts plausibly suggesting that Defendant Stanton took any action as an individual, and therefore also fails to allege that he acted in the clear absence of all jurisdiction. As a result, I recommend that the claims against Defendant Stanton be dismissed in their entirety based on the doctrine of absolute judicial immunity.

### C. Claims Against New York State Attorney General's Office

As set forth above in Part IV.A.2. of this Order and Report-Recommendation, this Court does not have authority to commence its own investigation, commence criminal prosecution, compel a law enforcement agency to investigate suspected criminal activity, or compel a prosecutor to prosecute. Prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

**\*7** As a result, I recommend that Plaintiff's claims against the New York State Attorney General's Office be dismissed.

### D. Claims Against Unnamed New York State Officials

I recommend that Plaintiff's claims against unnamed New York State officials regarding the denial of her Emergency Rental Assistance Program ("ERAP") housing application, be dismissed.

First, to the extent that those claims are asserted against employees of New York State in their official capacity, they are barred by the Eleventh Amendment. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009).

New York [6] has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). The Eleventh Amendment therefore bars Plaintiff's § 1983 claims against New York State officials in their official capacity as employees of New York State from proceeding in federal court.

Second, Courts have held that there is no private cause of action for the denial of an application for federally funded emergency rental assistance program funds. [7] *See Wexler v. Dep't of Children and Families*, 22-CV-1111, 2022 WL 5250140, at *2 (M.D. Fla. Sept. 19, 2022) (recommending dismissal of the plaintiffs' claims alleging that their federal Emergency Rental Assistance Program applications were

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 62 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

mishandled and misappropriated and holding that "there is no express or implied cause of action under the CAA and the undersigned is aware of no Court ... that has found otherwise"); *Turner v. Hamilton Cnty. Trustee Assn.*, 22-CV-0275, 2022 WL 1606289, at *4 (S.D. Ind. May 20, 2022) (dismissing the plaintiff's claim that his application for federally funded Emergency Rental Assistance Program was improperly denied as fraudulent and holding that "there is no private right of action created, expressly or impliedly, by Congress in the CAA or the CARES Act.").

As a result, I recommend that Plaintiff's claims against unnamed New York State officials for denial of her ERAP application, be dismissed based on the doctrine of immunity pursuant to the Eleventh Amendment and because it fails to state a claim upon which relief may be granted.

### E. Claims Against Defendant Schumer

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." *Chaney v. Koupash*, 04-CV-0126, 2008 WL 5423419, at *20 (N.D.N.Y. Dec. 30, 2008) (Homer, M.J.) (citing *Myers v. Barrett*, 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997) (Pooler, J.)). In addition, a valid equal protection claim may be brought by a "class of one" "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

**\*8** Plaintiff fails to allege any facts plausibly suggesting that she was treated differently from similarly situated individuals or any other individuals. Vague and conclusory allegations, are insufficient to plausibly suggest an equal protection violation. *See De Jesus v. Sears Roebuck & Co., Inc.*, 87 F.3d 65, 70 (2d Cir. 1996); *see Byng v. Delta Recovery Servs.*, LLC., 13-CV-0733, 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (D'Agostino, J.) (finding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to anyone or that someone else was treated differently than he was). The

Complaint is devoid of allegations plausibly suggesting that Plaintiff was similarly situated to anyone or that she was treated differently. Accordingly, I recommend that Plaintiff's Fourteenth Amendment Equal Protection claims against Defendant Schumer be dismissed for failure to state a claim upon which relief may be granted. [8]

Further, to the extent that Plaintiff attempts to state conspiracy claims pursuant to 42 U.S.C. §§ 1985, 1986, I recommend that they be dismissed for failure to state a claim upon which relief may be granted.

"[T]o make out a violation of § 1985(3) ..., the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 103 S. Ct. 3352, 3356 (1983). A "conspiracy" requires, for purposes of Section 1985, "a plurality of actors committed to a common goal." *Frooks v. Town of Cortlandt*, 997 F. Supp. 438, 456 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 899 (2d Cir. 1999).

In addition, a claim pursuant to Section 1985 requires that a plaintiff allege "some racial or [ ] otherwise class-based animus behind the conspirators' action." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004). The Complaint fails to allege any racial or class-based animus other than one conclusory assertion that the "Tech-giants" racially targeted Plaintiff because she is a Black American "and all the tech-giant defendants are of white or Asian" descent. (*See generally* Dkt. No. 1.) "[C]onclusory allegations are inadequate to make out a claim under Section 1985." *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 472 (S.D.N.Y. 2006) (citing *Salgado v. City of N.Y.*, 00-CV-3667, 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001); *Sadler v. Brown*, 793 F. Supp. 87, 90 (S.D.N.Y. 1992)). Thus, Plaintiff does not sufficiently allege a conspiracy between Defendant Schumer and/or others to deprive Plaintiff of any federally protected rights.

Likewise, Plaintiff does not allege a claim under Section 1986, which proscribes knowingly failing to prevent a Section 1985 conspiracy "which such person by reasonable diligence could have prevented," and explicitly requires an underlying

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 63 of 74

conspiracy under Section 1985. *See Brown v. City of Oneonta, New York,* 221 F.3d 329, 341 (2d Cir. 2000) ("[A] § 1986 claim must be predicated on a valid § 1985 claim.").

**\*9** As a result, I recommend that Plaintiff's claims against Defendant Schumer be dismissed.

### F. Claims Against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, <u>and</u> (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins,* 487 U.S. 42, 48-49 (1988). Generally, private parties are not state actors, and are not liable under § 1983. *Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir. 2013) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.,* 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky,* 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970) (quoting *United States v. Price,* 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns,* 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes,* 398 U.S. at 144).

Here, the Complaint fails to allege facts plausibly suggesting that Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg were "state actors" or were "collaborating" with state actors. Plaintiff's inclusion of citations to the statute—42 U.S.C. § 1983—in her Complaint, does not change that the

Complaint is devoid of factual allegations alleging any state involvement by Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg. (*See generally* Dkt. No. 1.)

Moreover, to the extent that Plaintiff sought to allege a claim against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg for stalking, cyberstalking, and harming Plaintiff, there is no private cause of action for stalking or general "harm." *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*5, 9 n.8, 11 (N.D.N.Y. June 4, 2020) (Lovic, M.J.) (citations omitted) ("[F]ederal stalking is a crime pursuant to 18 U.S.C. § 2261A, and does not provide for a private cause of action.... New York does not recognize private causes of action for stalking, harassment, or trespass."), *report and recommendation adopted by* 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.).

**\*10** As a result, I recommend that Plaintiff's claims against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg be dismissed for failure to state a claim upon which relief may be granted.

### G. Conspiracy

As set forth above in Part IV. E. of this Order and Report-Recommendation, the Complaint fails to allege facts plausibly suggesting racial or class-based animus—other than Plaintiff's legally insufficient, conclusory assertion that unnamed "Tech-giants" racially targeted Plaintiff because she is a Black American "and all the tech-giant defendants are of white or Asian" descent. (Dkt. No. 1 at 12.) Thus, Plaintiff does not sufficiently allege a conspiracy between Defendants and/or others to deprive her of any federally protected rights pursuant to 42 U.S.C. § 1985. Moreover, because Plaintiff fails to allege an underlying conspiracy pursuant to 42 U.S.C. § 1985, she likewise fails to allege a claim pursuant to 42 U.S.C. § 1986, which proscribes knowingly failing to prevent a Section 1985 conspiracy.

As a result, to the extent that Plaintiff alleges conspiracy claims pursuant to 42 U.S.C. §§ 1985, 1986 against any Defendant, I recommend that they be dismissed.

### H. Claims Against Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios,

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 64 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

**John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin**

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). "[D]irect participation as a basis of liability in this context requires intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (internal quotation marks omitted).

The caption of the Complaint lists Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin but the body of the Complaint does not contain any factual allegations regarding them. Thus, I recommend that Plaintiff's claims against Defendants Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin be dismissed. *See Johnson v. Gonzalez*, 14-CV-0745, 2015 WL 1179384, at *6 (N.D.N.Y. Mar. 13, 2015) (Kahn, J.) (dismissing the claims against a defendant where the complaint lists the defendant's "name in the caption, but fails to again name or assert allegations against him."); *Serrano v. New York State Dep't of Envtl. Conservation*, 12-CV-1592, 2013 WL 6816787, at *15 (N.D.N.Y. Dec. 20, 2013) (D'Agostino, J.) (citing *Jaffer v. Chemical Bank*, 93-CV-8459, 1994 WL 392260, at *3 (S.D.N.Y. July 26, 1994) (holding that "[w]hen a complaint's caption names a defendant but the complaint does not indicate that the named party injured the plaintiff or violated the law, the motion to dismiss must be granted")) (dismissing the plaintiff's claims against two defendants who were listed as parties in the complaint and in the caption, but not elsewhere in the complaint).

**I. Statements of Defendants Schultz, Vomer, and Sanders**

**\*11**  Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent Plaintiff has asserted any state law claims—such as defamation claims against Defendants Schultz, Vomer, and Sanders [9]— the Court decline to exercise jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

**V. OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* *Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [10]

**\*12**  I recommend that Plaintiff's claims against Defendant Utica Police Department be dismissed without leave to amend because it is not an entity that is amenable to suit. Moreover, to the extent that Plaintiff's claims against Defendant Utica Police Department are construed as against Defendant City of Utica, I recommend that they be dismissed without leave to amend because (1) Plaintiff's claims regarding Miller Park

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 65 of 74

**Robinson v. Williams, Not Reported in Fed. Supp. (2023)**

are factually frivolous, and (2) a better pleading will not cure the issue with Plaintiff's claims alleging that the Utica Police Department failed to arrest Mr. Tinco and the criminal trespassers.

I recommend that Plaintiff's claims against Defendant Stanton be dismissed without leave to amend because he is entitled to absolute judicial immunity.

In addition, a better pleading will not cure the issue with Plaintiff's claim against the New York Attorney General's Office alleging that it failed to investigate and prosecute alleged criminal and improper conduct. As a result, to the extent that the Complaint is construed as asserting any claim against the New York Attorney General's Office, I recommend that it be dismissed without leave to amend.

To the extent that Plaintiff's Complaint is construed as asserting any claims against unnamed New York State officials for denying her ERAP application, I recommend that they be dismissed without leave to amend because (1) the officials in their official capacity are immune from suit pursuant to the Eleventh Amendment, and (2) there is no private cause of action to pursue Plaintiff's allegations.

Further, to the extent that Plaintiff asserted claims against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg for stalking, cyber stalking, and harassment, I recommend that they be dismissed without leave to amend because there is no private cause of action for stalking, cyber stalking, and harassment.

This Court has serious doubts about whether Plaintiff can amend to assert actionable claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin, Schultz, Vomer, and Sanders. However, out of an abundance of caution, I recommend that Plaintiff be permitted to amend those claims against those Defendants. In addition, to the extent that Plaintiff sought to allege any defamation claim against Defendants Schultz, Vomer, and Sanders, I recommend that she be permitted to amend that claim too.

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

## VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

**\*13** Plaintiff has also submitted a request for appointment of counsel. (Dkt. No. 5.)

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

Case 1:25-cv-01838-AMN-ML   Document 15   Filed 07/08/26   Page 66 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp.*, 28 F.3d at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 5) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED only for purposes of filing and any appeal unless the trial court certifies in writing that the appeal is not taken in good faith**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED without prejudice to refiling**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims

pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, De Traglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, and Hopskin, Schultz, Vomer, and Sanders, and (2) a defamation claim against Defendants Schultz, Vomer, and Sanders, because it fails to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts (1) claims against Defendants Utica Police Department, City of Utica, and Stanton; (2) claims against the New York Attorney General's Office and unnamed New York State officials; and (3) claims of stalking, cyber stalking, and harassment against Defendants Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

 **\*14**  **ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [11]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [12] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3352758

---

**Footnotes**

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 67 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

1     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

2     It is unclear if Plaintiff intended to state that she "accidentally menaced" the maintenance person or that she "accidentally" used mace or some form of pepper spray.

3     The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

4     Plaintiff is reminded that, although her application to proceed *in forma pauperis* has been granted, she is still required to pay fees that she may incur in this action, including copying and/or witness fees.

5     To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

6     "An official capacity suit against a municipal employee is a suit against the municipality itself." *Pittman v. Billings*, 20-CV-0422, 2020 WL 2079440, at *9 (N.D.N.Y. Apr. 30, 2020) (Baxter, M.J.), *report and recommendation adopted by* 2020 WL 2574631 (N.D.N.Y. May 21, 2020) (Sharpe, J.).

7     The "Coronavirus Aid Relief and Economic Security Act ("CARES Act"), which was continued by the [Consolidated Appropriations Act of 2021] CAA and the America Rescue Plan Act, allocated funds for rental assistance." *Turner*, 2022 WL 1606289, at *2.

8     The Court notes that, should this action proceed against Defendant Schumer and the United States Attorney make the requisite certification such that the United States be substituted as defendant, Plaintiff has failed to allege compliance with the administrative exhaustion requirements set forth in the Federal Tort Claims Act (FTCA). *See De Masi v. Schumer*, 608 F. Supp. 2d 516, 518-526 (S.D.N.Y. 2009) (replacing the United States as the allegedly liable party and proceeding as a FTCA suit where the plaintiff alleged that Senator Charles Schumer failed to respond to the plaintiff's repeated requests for assistance as one of Senator Schumer's constituents).

9     To the extent that Plaintiff attempts to allege a retaliation claim against Defendant Sanders pursuant to 42 U.S.C. § 1983 and the First Amendment, I recommend that it also be dismissed because Plaintiff fails to allege that she engaged in any protected speech. (*See generally* Dkt. No. 1.) Instead, Plaintiff alleges only that Defendant Sanders accused Plaintiff of "want[ing] [U]tica police fired" and asked "why should we help you[?]" after refusing to make an arrest. (Dkt. No. 1 at 7.) However, with additional factual allegations, Plaintiff may have a viable claim against Defendant Sanders. *See generally Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503, 513-516 (6th Cir. 2020) (citing *Briner v. City of Ontario*, 370 F. App'x 682, 700 (6th Cir. 2010); *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)) (holding that (1) "[t]he freedom of speech ... protects the right of an ordinary citizen to criticize public officials ... without fear of criminal or civil repercussions," and thus, formal petitions including citizen complaints and informal requests for police assistance qualify as protected petitioning of the government, and (2) although " 'the right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views[,]' [a]nd individuals have no constitutional entitlement to police protection[,].... the 'unconstitutional conditions' places limits on the government's ability to deny an otherwise discretionary benefit in retaliation for a person's protected speech.... [thus the Sixth Circuit has previously held that a plaintiff] stated a plausible claim by

suggesting that the police 'refused to investigate the theft of [his] GMC truck in retaliation for complaints regarding the [police's] alleged failure to properly investigate [an earlier] burglary[.]' ").

10    *See also Carris v. First Student, Inc.,* 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir. 1999)— that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)), *rev'd on other grounds,* 682 F. App'x 30.

11    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

12    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 69 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

2023 WL 2986825
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sheila ROBINSON, Plaintiff,

v.

Mark WILLIAMS, Utica NY, Police Officers 1-12; Kyle Piersall, Utica NY, Police Officers 1-12; John DeTraglia, Utica NY, Police Officers 1-12; Joseph Aiello, Utica NY, Police Officers 1-12; Brian Baye, Utica NY, Police Officers 1-12; Marissa Vomer, Utica NY, Police Officers 1-12; K. Phillips, Utica NY, Police Officers 1-12; Benny Grullon, Utica NY, Police Officers 1-12; Derek Shultz, Utica NY, Police Officers 1-12; Reginald Sanders, Utica NY, Police Officers 1-12; Brian French, Utica NY, Police Officers 1-12; Hiram Rios, Utica NY, Police Officers 1-12; Louis L. Stanton, New York State Judge; John Does, Unknown New York State Erap Officials; Letitia James, New York State Attorney General; Chuck Schumer, U.S. Senator for New York; Amazon.com; Jeff Bezos, CEO of Amazon.com; Facebook.com; Mark Zuckerberg, CEO of Facebook.com; Google.com; Sergin Brin, of Google; Larry Page, of Google; Sundar Pichai, CEO of Google; Zazzle.com; Robert Beaver, CEO of Zazzle.com; Cafepress.com; Bob Marino, CEO of Cafepress.com; Fred Durham, of Cafepress.com; Redbubble.com; Barry Newstead, of Redbubble.com; Martin Hopskin, of Redbubble.com; Utica New York Police Dept., and City of Utica, New York, Defendants.

6:22-CV-0982 (GTS/ML)
|
Signed April 18, 2023

**Attorneys and Law Firms**

SHEILA ROBINSON, Plaintiff, Pro Se, 939 Ontario Avenue, Niagara Falls, New York 14301.

### DECISION and ORDER

GLENN T. SUDDABY, United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights action filed by Sheila Robinson ("Plaintiff") against the above-captioned individuals and entities ("Defendants"), are

(1) United States Magistrate Judge Miroslav Lovric's Report-Recommendation recommending that some of the claims in Plaintiff's Complaint be *sua sponte* dismissed without leave to amend, and that the remaining claims in that Complaint be *sua sponte* dismissed with leave to amend, and (2) Plaintiff's Objections to the Report-Recommendation. (Dkt. Nos. 6, 9.)

After carefully reviewing the relevant filings in this action, the Court finds no error in the Report-Recommendation, clear or otherwise: [1] Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Court accepts and adopts the Report-Recommendation for the reasons stated therein. To those reasons, the Court adds only two points.

First, even when construed with the utmost of special liberality, Plaintiff's "Objections" fail to assert a *specific* challenge to the Report-Recommendation. (*Compare* Dkt. No. 9 *with* Dkt. No. 6.) [2] As a result, the "challenged portions" of the Report-Recommendation are entitled to only a clear-error review. In any event, even if the Court were to subject those portions of the Report-Recommendation to a de novo review, the Court would find that they survive that review.

**\*2** Second, rather than wait for the undersigned's ruling on Magistrate Judge Lovric's Report-Recommendation, Plaintiff has attempted to file an Amended Complaint. (Dkt. No. 10.) This litigation practice has complicated matters because, even assuming that Plaintiff had an absolute right to file such an Amended Complaint under Fed. R. Civ. P. 15(a)(1) despite the fact that she had not yet served her Complaint, [3] an amended complaint supersedes an original complaint in all respects. [4] This means that, arguably, Plaintiff's Amended Complaint has partially mooted Magistrate Judge Lovric's Report-Recommendation, which analyzed Plaintiff's *original* Complaint.

Out of a desire for judicial efficiency, the Court is tempted to apply the recommendations in the Report-Recommendation to Plaintiff's Amended Complaint. However, the Court is mindful of the Second Circuit's admonition that a *pro se* plaintiff's request to amend her complaint when a motion to dismiss is pending should be denied only without prejudice, or perhaps stayed, until she has had the benefit of the district court's ruling on the motion to dismiss. [5]

Case 1:25-cv-01838-AMN-ML   Document 15   Filed 07/08/26   Page 70 of 74

Robinson v. Williams, Not Reported in Fed. Supp. (2023)

For all of these reasons, the Court has chosen to apply Magistrate Judge Lovric's Report-Recommendation to Plaintiff's original Complaint while deeming Plaintiff's Amended Complaint as a *proposed* Amended Complaint (out of special solicitude to Plaintiff as a *pro se* civil rights litigant), and holding that proposed Amended Complaint in abeyance pending confirmation from Plaintiff that it is indeed the Amended Complaint on which she wishes to proceed.

**\*3  ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED**; and it is further

**ORDERED** that the following claims in Plaintiff's Complaint (Dkt. No. 1) are **DISMISSED**: (1) Plaintiff's claims against Utica Police Department, the City of Utica, and Judge Stanton; (2) Plaintiff's claims against the New York State Attorney General and unnamed New York State officials; and (3) Plaintiff's stalking claims, cyberstalking claims, and harassment claims against Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, and Zuckerberg; and it is further

**ORDERED** that the remaining claims in Plaintiff's Complaint (Dkt. No. 1) **shall be DISMISSED** without further Order of this Court **UNLESS**, within **THIRTY (30) DAYS** of this Report-Recommendation, Plaintiff files an **AMENDED COMPLAINT** that corrects the pleading defects identified in those claims, which are specified as follows: (1) Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 against Defendants Schumer, Amazon.com, Facebook.com, Google.com, Zazzle.com, Cafepress.com, Redbubble.com, Bezos, Zuckerberg, Williams, Piersall, DeTraglia, Aiello, Baye, Phillips, Grullon, French, Rios, John Does, James, Brin, Page, Pichai, Beaver, Marino, Durham, Newstead, Hopskin, Schultz, Vomer, and Sanders; and (2) Plaintiff's defamation claims against Defendants Schultz, Vomer, and Sanders; and it is further

**ORDERED** that, more specifically, within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiff shall do one of the following two things: (1) notify the Court in writing that her proposed Amended Complaint (Dkt. No. 10) is indeed the Amended Complaint on which she wishes to proceed, or (2) file a revised Amended Complaint; and it is further

**ORDERED** that, upon Plaintiff's fulfillment of one of the conditions set forth in the preceding paragraph (or, in the absence of his fulfillment of either condition, after the passage of thirty days), Plaintiff's operative Amended Complaint shall be referred to Magistrate Judge Lovric for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e) (as well as his management of pretrial matters).

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2986825

---

**Footnotes**

1    When no objection is made to a report-recommendation (or when only a *general* objection is made to a report-recommendation), the Court subjects that report-recommendation to only a clear-error review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a clear-error review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*; *see also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks omitted).

2    When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c); *see also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII

claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

3    Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure provides that "[a] party may amend its pleading once as a matter of course *within* ... 21 days after serving it...." Fed. R. Civ. P. 15(a)(1)(A) (emphasis added). Here, Plaintiff never served her Complaint; thus, she is arguably not yet *within* the 21-day window in which she may filed an Amended Complaint as a matter of course. *Compare Morris v. New York State Gaming Comm'n*, 18-CV-0384, 2019 WL 2423716, at *4 (W.D.N.Y. March 14, 2019) ("Because Plaintiff never served the original Complaint, the 21-day time limit to file an amended complaint under Rule 15(a)(1)(A) never *commenced*.") (emphasis added) *with Henderson v. Wells Fargo Bank, NA*, 13-CV-0378, 2015 WL 630438, at *2 (D. Conn. Feb. 13, 2015) ("Fed. R. Civ. P. 15(a) provides that a 'party may amend its pleading once as a matter of course within ... 21 days after serving it.' Because Plaintiff has not yet served Defendant with the complaint, her motion is granted although unnecessary because leave of the Court is not required.").

4    *See Int'lControls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect."); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1476, at 556-57 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."); *cf.* N.D.N.Y. L.R. 7.1(a)(4) ("[T]he proposed amended pleading ... will supersede the pleading sought to be amended in all respects.").

5    *See Cresci v. Mohawk Valley Community College*, 693 F. App'x 21, 25 (2d Cir. June 2, 2017) ("The court's criticism of Cresci for failure to submit a proposed amended complaint before learning whether, and in what respects, the court would find deficiencies was unjustified, and the court's denial of leave to replead, simultaneously with its decision that the complaint was defective, effectively deprived Cresci of a reasonable opportunity to seek leave to amend.").

---

**End of Document**                                      © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3403519
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Howard WEISMAN, Plaintiff,
v.
Paul BAUR, Wyomissing Borough
Police Detective, et al., Defendants.

Civil No. 5:20-cv-06100-JMG
|
Filed 08/04/2021

**Attorneys and Law Firms**

Howard Weisman, Reading, PA, Pro Se.

**MEMORANDUM OPINION**

GALLAGHER, United States District Court Judge

 **\*1** Plaintiff Howard Weisman, proceeding *pro se*, raises claims against seven defendants who purportedly colluded to commit "violations of professional conduct, ethics, misdemeanors & felonies." Am. Compl. ¶ 23, ECF No. 11. [1] For the reasons set forth below, we will order Plaintiff to show cause why the case should not be dismissed for lack of subject matter jurisdiction.

**I. ALLEGATIONS**

Plaintiff brings claims against Wyomissing Borough Police Detective Paul C. Baur, the Borough of Wyomissing, three employees of a Wyomissing diner—George Zeppos, Eleny Zeppos, and Desiree Dahms-Gehr—and the employees' counsel (collectively, "Defendants"). *See id.* ¶¶ 2–6. The case arises from "an un-related employment dispute" between Plaintiff and the diner employees. *Id.* ¶ 2.

Defendants allegedly conspired to intimidate Plaintiff instead of settling the dispute. *Id.* ¶¶ 3, 6–8. To that end, Detective Baur personally delivered a letter to Plaintiff that cautioned him not to "step foot on any of the properties owned or managed by Mr. and Mrs. Zeppos and to have no contact with them or their families or employees." Am. Compl. Ex. A; Am. Compl. ¶ 14. Plaintiff alleges that this "message of intimidation" prevented him "from asserting his rights to pursue legal remedy & free speech." Am. Compl. ¶¶ 6, 23. In

support, Plaintiff invokes five federal criminal statutes along with a federal regulation that proscribes abuse of office by those who act or purport to act in an official capacity for an Indian tribe. *Id.* ¶¶ 9–10.

**II. DISCUSSION**

Although Defendants recently filed a motion to dismiss, *see* Mot. 7–14, ECF No 13-2, we are "obliged to address issues of subject-matter jurisdiction *sua sponte*." *Minford v. Berks Cnty. (Inc.)*, No. 14-mc-224, 2014 WL 4858112, at \*1 (E.D. Pa. Sept. 29, 2014) (citing *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Phila.*, 657 F.2d 29, 36 (3d Cir. 1981)); *see also Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) ("[A] court may raise jurisdictional issues *sua sponte*."). If we lack subject matter jurisdiction, we must dismiss the action. FED. R. CIV. P. 12(h)(3); *see also Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016) ("[F]ederal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." (internal quotation marks and citation omitted)).

"Federal district courts have subject matter jurisdiction over civil actions that arise (1) under the Constitution, laws or treaties of the United States (*i.e.*, federal question jurisdiction), or (2) between citizens of different states where the matter in controversy exceeds $75,000 (*i.e.*, diversity jurisdiction)." *City of Newark v. Lawson*, 346 F. App'x 761, 763 (3d Cir. 2009) (citing 28 U.S.C. §§ 1331, 1332). Plaintiff pleads that he is a Pennsylvania citizen. Am. Compl. ¶ 1. The Borough of Wyomissing is not a citizen of a different state, so diversity jurisdiction does not exist here. *See Prater v. Am. Heritage Fed. Credit Union*, 351 F. Supp. 3d 912, 918 (E.D. Pa. 2019) ("Diversity jurisdiction requires complete diversity, which in turn requires that no plaintiff be a citizen of the same state as any defendant." (internal quotation marks and citation omitted)).

 **\*2** We therefore turn to federal question jurisdiction. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). "For a claim to arise under the Constitution, laws or treaties of the United States, a right or immunity created by the Constitution or laws of the United States must be an essential element of the plaintiff's claim." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 939 F. Supp. 398, 399 (E.D. Pa. 1996) (citing *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974)). "Furthermore,

Weisman v. Baur, Not Reported in Fed. Supp. (2021)

Case 1:25-cv-01838-AMN-ML    Document 15    Filed 07/08/26    Page 73 of 74

the cause of action must be created by the federal law or the vindication of a right under state law must turn upon the construction of that federal law." *Id.* (citing *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)).

Here, Plaintiff does not raise any claims that would confer federal question jurisdiction. All the criminal statutes cited by Plaintiff "do not provide, explicitly or implicitly, private civil causes of action." [2] *Jung v. Bank of Am., N.A.*, No. 3:16-cv-00704, 2016 WL 5929273, at *3 (M.D. Pa. Aug. 2, 2016) (explaining that 18 U.S.C. §§ 241–242 and 18 U.S.C. § 371 do not provide private civil causes of action); *Nayak v. Voith Turbo, Inc.*, No. 1:14-cv-01053, 2015 WL 1605576, at *19 (M.D. Pa. Apr. 9, 2015) (same as to 18 U.S.C. § 201); *Humphrey v. Pa. Ct. of Common Pleas of Phila.*, No. 20-cv-2335, 2021 WL 268498, at *2 n.3 (E.D. Pa. Jan. 27, 2021) (same as to 18 U.S.C. § 2261A). Neither does the cited regulation. [3] *See Taverna v. Palmer Twp.*, No. 5:20-cv-0812-JDW, 2020 WL 5554387, at *4 (E.D. Pa. Sept. 16, 2020) (describing 25 C.F.R. § 11.448 as a regulation "that do[es] not allow private individuals to bring suit").

Construing the First Amended Complaint liberally as one invoking 42 U.S.C. § 1983—indeed, Plaintiff makes reference to a violation of his rights—fares no better. *See Draper v. Darby Twp. Police Dep't*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011) ("[T]his court is bound to give a liberal construction to pro se pleadings."). This is because Section 1983 "is not a jurisdictional statute; it only fashions a remedy." *Gonzalez v. Young*, 560 F.2d 160, 164 (3d Cir. 1977); *see also* 6 FED. PROC., L. ED. § 11:287 (explaining that Section 1983 "only fashions a remedy

and is not a jurisdictional statute so that persons asserting claims thereunder must look to other authority to obtain jurisdiction").

Again, the problem here is that the cited federal regulation and criminal statutes do not provide private causes of action, and Section 1983 "does not in and of itself create substantive rights." *Digianvittorio v. D'Antonio*, No. 96-6781, 1997 WL 13681, at *4 (E.D. Pa. Jan. 13, 1997). Alleged violations of these criminal and regulatory authorities, therefore, do not provide a basis on which we can exercise subject matter jurisdiction, even under a Section 1983 framework. *See, e.g.*, *Greene v. Sch. Dist. of Phila.*, No. 17-5444, 2019 WL 12117147, at *1 n.1 (E.D. Pa. Mar. 25, 2019) (dismissing Section 1983 action for lack of subject matter jurisdiction).

### III. CONCLUSION

**\*3** For the foregoing reasons, it appears that we lack subject matter jurisdiction over this action. That being said, "when addressing the issue of subject-matter jurisdiction *sua sponte*, courts should ordinarily give the plaintiff 'notice and an opportunity to respond.' " *Minford*, 2014 WL 4858112, at *6 (quoting *Schneller ex rel. Schneller v. Fox Subacute at Clara Burke*, 317 F. App'x 135, 138 (3d Cir. 2008)). Accordingly, we will afford Plaintiff twenty-one (21) days to file a response explaining how we have subject matter jurisdiction over this action. An appropriate order follows.

### All Citations

Not Reported in Fed. Supp., 2021 WL 3403519

---

### Footnotes

1    Plaintiff attached a First Amended Complaint to his proof of service. *See* ECF No. 11. We will treat the First Amended Complaint as the operative pleading. In any event, both the original and the amended complaint suffer the same jurisdictional defects.

2    The First Amended Complaint cites the following federal criminal statutes: 18 U.S.C. § 201 (bribery of public officials and witnesses), 18 U.S.C. § 241 (conspiracy against rights), 18 U.S.C. § 242 (deprivation of rights under color of law), 18 U.S.C. § 371 (conspiracy to commit offense or to defraud United States), and 18 U.S.C. § 2261A (stalking).

3    The First Amended Complaint cites 25 C.F.R. § 11.448.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.